Laura K. Granier, NBN 7357
*lgranier@lionelsawyer.com*
Ryan A. Andersen, NBN 12321
*randersen@lionelsawyer.com*
**LIONEL SAWYER & COLLINS**
1100 Bank of America Plaza
50 West Liberty Street
Reno, Nevada 89501
Telephone: 702-788-8666
Facsimile: 702-788-8682

**Electronically Filed: August 6, 2013**

*Attorneys for Utilities, Inc. of Central Nevada*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 12-22484-LBR |
| | Chapter 11 |
| CALDERA P&G, | |
| Debtor. | **DECLARATION OF LAURA K. GRANIER IN SUPPORT OF UTILITIES, INC. OF CENTRAL NEVADA'S RESPONSE TO NYE COUNTY'S OPPOSITION TO MOTION TO MODIFY PLAN** |
| | Hearing Date:  August 7, 2013 |
| | Hearing Time:  2:30 PM |
| | Courtroom:     1 |

LAURA K. GRANIER, being first duly sworn under oath, deposes and says:

1.      I am a shareholder of Lionel Sawyer & Collins and I represent Utilities, Inc. of Central Nevada ("UICN") in this action.  I have also represented UICN in various matters before the Public Utilities Commission of Nevada ("PUCN") and various district court actions relevant to this matter.  I make this declaration in support of UICN's Response to Nye County's

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

Opposition to Motion to Modify Plan.[1]  The matters set forth in this declaration are based on my own personal knowledge.  If called upon to testify, I am competent to testify as to the matters set forth herein.

2.        On March 1, 2013, I met with the Trustee, counsel for the Trustee, and representatives from Nye County (including Brian Kunzi, Pam Webster, and Daryl Lacy) in Pahrump to work out a proposal for the bankruptcy court regarding the Willow Creek Golf Course property.

3.        On April 11, 2013, I left a voicemail for Mr. Kunzi requesting a call with him to discuss the proposed draft easement agreement my staff forwarded to him that day.  Mr. Kunzi never responded to the phone call.

4.        I never received any response from Mr. Kunzi until May 24, 2013.

5.        Mr. Kunzi's May 24 response to the draft easement agreement raised concerns with UICN given that the parties never agreed to an exclusive easement nor did UICN agree to any allocated right for the County to the effluent – just that they would have access to use what was available.  There was never any clear statement made by Nye County prior to July 25, 2013 that it insists on free groundwater from UICN or unfettered use of UICN's water rights for the County to provide itself groundwater within UICN's service territory nor was that ever discussed nor understood.

6.        UICN's counsel and the Trustee's counsel reached out to Mr. Kunzi regarding the status of his comments and moving the proposed agreement between Nye County and UICN forward.  The County was unresponsive.

_____

[1] Nye County served its Opposition to Motion to Modify Plan, along with a Notice of Appearance, by email on Monday, August 5, 2013 at 1:52 PM.  A review of the Court's docket does not show that these documents have been filed with the Court as of the time of this filing.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

2

7.      Exhibit 1 is a true and correct copy of an Order Granting Plaintiff's Motion for Summary Judgment Amended Nunc Pro Tunc, entered on October 15, 2010 in *Utilities, Incorporated of Central Nevada vs. Willow Creek Holdings, LLC, et al.,* Case No. CV 27398, Fifth Judicial District, State of Nevada, confirming UICN owns the water rights at Willow Creek.

8.      Exhibit 2 is a true and correct copy of correspondence between myself, the Trustee, and Brian Kunzi, Nye County District Attorney, between March and August, 2013.

9.      Exhibit 3 is a true and correct copy of the relevant portions of the Minutes of the June 11, 2008 Meeting of the Pahrump Regional Planning Commission (downloaded from Nye County's website on August 5, 2013 by my staff) regarding CU-08-0008, the Conditional Use Permit application to allow for a casino/hotel/resort on APN 39-651-01 (the Zucaro parcel). Upon information and belief, the conditional use permit was later revoke due to the impending Trustee's sale of the Willow Creek Golf Course.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct and was executed this 6th day of August, 2013.


                                        /s/ Laura K. Granier
                                        LAURA K. GRANIER

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

# EXHIBIT 1

# EXHIBIT 1

Laura K. Granier, Esq., SBN 7357
Douglas A. Cannon, Esq., SBN 9375
Elizabeth A. High, Esq., SBN 10082
LIONEL SAWYER & COLLINS
1100 Bank of America Plaza
50 West Liberty Street
Reno, Nevada 89501
(775) 788-8666 (Telephone)
(775) 788-8682 (Fax)

Attorneys for Plaintiff,
UTILITIES INC. OF CENTRAL NEVADA

**Sheila Winn**

FILED

2010 OCT 15 P 4:00

NYE COUNTY CLERK
BY DEPUTY

IN THE FIFTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF NYE

| | |
|---|---|
| Utilities Incorporated of Central Nevada, a Nevada Corporation | Case No. CV 27398 |
| Plaintiff, | Dept No. 1 |
| v. | |
| Willow Creek Holdings, LLC, a Nevada Limited Liability Company; Aram Maissian, Inc., a Nevada Corporation; and Jorei Enterprises, LLC, a California Limited Liability Company, | |
| Defendants. | |

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT
## AMENDED *NUNC PRO TUNC*

The Court hereby amends its Order previously entered on October 13, 2010 *nunc pro tunc*.

On August 16, 2010, Plaintiff Utilities Inc. of Central Nevada ("UICN") served a Motion for Summary Judgment ("Motion") on all parties.[1] No response or opposition to the Motion was filed. Pursuant to Local Rule 13(3), "[f]ailure of the opposing party to serve and file his written opposition may be construed as an admission that the motion is meritorious and a consent to granting the same." On September 13, 2010, UICN filed a reply memorandum and submitted the Motion for consideration.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 WEST LIBERTY ST.
RENO,
NEVADA 89501
(775) 788-8666

1    The Court, having reviewed the Motion and subsequent related filings, no opposition

2  having been filed, and good cause appearing, NOW, **THEREFORE, IT IS HEREBY:**

3    **ORDERED** that UICN's Motion for Summary Judgment is **GRANTED**.

4    The Court finds that UICN has owned the water rights at issue in this case since April

5  2002. Accordingly, Willow Creek Holdings, LLC had no authority to pledge the UICN Water

6  Rights as security for a loan provided to Willow Creek Holdings, LLC under a Water Rights

7  Deed of Trust in favor of Jorei Enterprises, LLC (recorded as Nye County, Nevada Recorder

8  Document No. 692205 on August 15, 2007, attached hereto as Exhibit A). Based on this, the

9  Court finds that the Water Rights Deed of Trust is **void as a matter of law**. Therefore, UICN is

10  entitled to summary judgment on all claims against Willow Creek Holdings, LLC and its

11  managing member, Aram Maissian, Inc.

12    **IT IS FURTHER ORDERED** that UICN is entitled to recover all damages, costs, and

13  reasonable attorney's fees incurred as a result of Defendants' wrongful conduct. UICN may

14  submit an application to recover its reasonable attorneys' fees and costs within ten (10) days of

15  the entry of this order.

16    Dated this /4th day of October, 2010.

17                                                JOHN P. DAVIS

18                                    _____
                                              DISTRICT JUDGE
19

20  Submitted by:
    LIONEL SAWYER & COLLINS

21  By: _____
22  Laura K. Granier, Esq., SBN 7357
    Elizabeth A. High, Esq., SBN 10082
23  LIONEL SAWYER & COLLINS
    50 West Liberty Street, Suite 1100
24  Reno, Nevada 89501
    (775) 788-8666 (Telephone)
25  (775) 788-8682 (Fax)
    Attorneys for Plaintiff

26

27

**CERTIFIED COPY**
The document to which this certificate is attached is a full, true and correct copy of the original on file and of record in my office.
Date: October 15, 2010
Sandra L. Merlino, clerk of the Fifth Judicial District Court, in and for the County of Nye, State of Nevada.
By Sheila Wian _____ Deputy
Per NRS 239 Sec. 6 the SSN may be redacted, but in no way affects the legality of the document.

28
LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

---

[1] *See* Motion for Summary Judgment filed August 24, 2010.

2

## CERTIFICATE OF SERVICE

Pursuant to N.R.C.P. 5(b), I certify that I am an employee of Lionel Sawyer & Collins and not a party to, nor interested in, the within action; that on October 14, 2010, a true and correct copy of the foregoing **Order Granting Plaintiff's Motion for Summary Judgment Amended _Nunc Pro Tunc_** was enclosed in a sealed envelope and served on the following by U.S. mail, first-class postage prepaid:

Willow Creek Holdings, LLC
3395 South Jones Blvd., Suite 441
Las Vegas, Nevada 89146
Ph:  702-591-9009
_Defendant_

Aram Maissian, Inc.
3395 South Jones Blvd., Suite 441
Las Vegas, Nevada 89146
Ph:  702-591-9009
_Defendant_

Randolph L. Howard, Esq.
Kolesar & Leatham
3320 West Sahara Avenue, Suite 380
Las Vegas, Nevada 89102
Facsimile: 702.362.9472
_Attorney for Defendant Jorei Enterprises, LLC_
_and Judicial Receiver for PEMGroup, Robert P. Moiser_

Jeanette Sparks

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

# EXHIBIT A

# EXHIBIT A

692205

**APNs:**      039-651-01, 039-511-26, 039-541-13, 039-552-09, 039-591-15, 039-601-01, 039-621-08, 039-661-01, 039-681-08, 039-691-34, 039-704-09, 039-731-01, 039-741-01, 039-751-07, 039-761-01, 039-783-07, 039-821-19 and 039-651-02
**Application (Permit):** 47074, 46309, 46310, 46316, 46317, 46324, 46325, 46326, and 52367.
Escrow # NCS-289392-HHLV (ak)
**Recorded at the Request of:** First American Title

**When recorded mail to:**
Jorei Enterprises, LLC.
One Park Plaza, Suite 550
Irvine, California 92614
Attention; Peter Paul Mendel, Esq.
**And mail tax statements to:**
Willow Creek Holdings, LLC
101 Convention Center Drive #1100
Las Vegas, NV 89109
Attention: Aram Maissian

---

## WATER RIGHTS DEED OF TRUST

THIS DEED OF TRUST (this "Deed of Trust") is made this 13th day of August, 2007, by and between Willow Creek Holdings, LLC, whose address is 101 Convention Center Drive #1100, Las Vegas, NV 89109 (hereinafter referred to as "Trustor") First American Title Insurance Company, whose address is 3960 Howard Hughes Parkway #380, Las Vegas, NV 89109 (hereinafter referred to as "Trustee"), and Jorei Enterprises, LLC., whose address is One Park Plaza, Suite 550, Irvine, California 92614 (hereinafter referred to as "Beneficiary").

WHEREAS, Trustor owes Beneficiary in lawful money of the United States the sum of $6,500,000.00 as secured by that certain real property bearing Nye County Assessor's Parcel Numbers 039-651-01, 039-511-26039-541-13, 039-552-09, 039-591-15, 039-601-01, 039-621-08, 039-661-01, 039-681-08, 039-691-34, 039-704-09, 039-731-01, 039-741-01, 039-751-07, 039-761-01, 039-783-07, 039-821-19 and 039-651-02 (the "Real Property") and as is further secured by the Water Rights (defined herein) via this Deed of Trust; and,

WHEREAS BENEFICIARY'S RESPECTIVE PROPORTIONATE INTEREST in and to the Water Rights is described on **Exhibit A**.

NOW, THEREFORE, for the purpose of securing that certain secured promissory note of even date herewith and any extensions or renewals thereof (the "Note") and any money or other consideration with interest thereon that may be advanced by or otherwise become due to Beneficiary under the provisions hereof, Trustor does hereby irrevocably pledge, assign, hypothecate, convey, mortgage, transfer and set over unto Trustee in trust, with power of sale,

692205

for the benefit and security of Beneficiary (the "Trust"), all of Trustor's rights, title and interests in and to all of;

      a.    the water rights described in **Exhibit A**, (collectively, the "Water Rights");

      b.    All of the interest, right, title and other claim or demand both in law and in equity, which Trustor now has or may hereafter acquire in connection with the Water Rights, and any other proceeds from any sale or disposition thereof which Trustor now has or may hereafter; and

      c.    All of the right, title, interest and claim whatsoever, at law or in equity, to all other reversions, remainders, proceeds, rents, revenues, issues, earnings, income, products and profits thereof.

Provided, however, that each Beneficiary's interest in and to the Water Rights is only to the extent as provided for on Exhibit A .

Trustor further agrees as follows:

      1.    To properly care for and keep the Water Rights in good condition, to comply with all laws, ordinances regulations and customary practices relating to the Water Rights;

      2.    To pay and discharge all costs, fees and expenses of the above-mentioned Trustee, including cost of evidence of title and Trustee's fees in connection with sale, whether completed or not, which amounts shall become due upon delivery by Trustee of a notice of breach and election to sell, as provided herein and by Nevada law.

      3.    If, during the existence of the Trust there be commenced or pending any suit or action affecting said Water Rights, or any part thereof, or the title thereto, or if any adverse claim for or against said Water Rights, or any part thereof, be made or asserted, Trustor will appear in and defend any such matter purporting to affect the security.

      4.    Acceptance by Beneficiary of any sum in payment of any indebtedness secured hereby, after the date when the same is due, shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums so secured or to declare default as herein provided for failure so to pay.

      5.    Beneficiary shall, at any time, or from time to time, upon written request of Trustor, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon said property, promptly execute any instruments in connection with the maintenance or use of the Water Rights.

      6.    Upon receipt of a written request from the Beneficiary reciting that all sums secured hereby have been paid and upon surrender of this Deed of Trust and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey without warranty the Water Rights then held hereunder. The recitals in such reconveyance of any matters of fact shall be conclusive proof of the trust thereof. The grantee in such reconveyance

**692205**

may be described in general terms as "the person or persons legally entitled thereto," and Trustee is authorized to retain this Deed of Trust and Note.

7.      Should default be made by Trustor in payment of any indebtedness secured hereby and/or in performance of any agreement herein, or in the Note, the Beneficiary may declare all sums secured hereby immediately due by delivery to Trustee of a written declaration of default and demand for sale, and of written notice of default and election to cause said property to be sold (which notice Trustee shall cause to be filed for record) and shall surrender to Trustee this Deed, the Note and all documents evidencing any expenditure secured hereby.

(a)  After three (3) months shall have elapsed following recordation of any such notice of default, Trustee shall sell the Water Rights at such time and at such place in the State of Nevada as Trustee, in its sole discretion, shall deem best to accomplish the objects of these trusts, having first given notice of such sale as then required by law. Place of sale may be either in the county in which the Water Rights to be sold, or any part thereof, is situated, or at an office of Trustee located in the State of Nevada.

(b)  Trustee may postpone the sale of all, or any portion, of the Water Rights by public announcement at the time fixed by said notice of sale, and may thereafter postpone said sale from time to time by public announcement at the time previously appointed.

(c)  At the time of sale so fixed, Trustee may sell the Water Rights so advertised or any part thereof, either as a whole or in separate parcels at its sole discretion, at public auction, to the highest bidder for cash in lawful money of the United States, payable at time of sale, and shall deliver to such purchaser a deed conveying the Water Rights so sold, but without covenant or warranty, express or implied. Trustor hereby agrees to surrender, immediately and without demand, possession of the Water Rights to such purchaser. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

(d)  Trustee shall apply the proceeds of any such sale to payment of: (i) expenses of sale and all charges and expenses of Trustee and of these trusts, including cost of evidence of title and Trustee's fee in connection with sale; (ii) all sums expended under the terms hereof, not then repaid, with accrued interest at the rate of 12% per annum; (iii) all other sums then secured hereby; and (iv) the remainder, if any, to the person or persons legally entitled thereto.

8.      This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisee, administrators, executors, successors and assigns.

9.      Trustee accepts these trusts when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

692205

10.    The Beneficiary may, at any time, by instrument in writing, appoint a successor or successors to Trustee named herein or action hereunder, which instrument, executed and acknowledged by Beneficiary, and recorded in the Office of the County Recorder of the county (or counties) wherein the Property is situated, shall be conclusive proof of the proper substitution of such successor or trustee, who shall have all the estate, powers, duties and trusts in the premises vested in or conferred on the original Trustee. If there be more than one trustee, either may act alone and execute the trusts upon the request of the Beneficiary and his acts shall be deemed to be the acts of all trustees, and the recital in any conveyance executed by such sole trustee of such requests shall be conclusive evidence thereof, and of the authority of such sole trustee to act.

Except as provided herein, if all or any part of the property described above or an interest therein is sold or transferred by Trustor without Beneficiary's consent, Beneficiary may declare all sums secured by this Deed of Trust immediately due and payable. Furthermore, Beneficiary may not assign, sell or transfer its ownership in the Water Rights, except with the approval of Beneficiary's Representative.

With Beneficiary's Representative's written consent, which may not be unreasonably withheld, Trustor may (1) change the point of diversion, manner of use, and/or place of use for the Water Rights, provided however, that upon any such change, the Water Rights must remain encumbered pursuant to the terms of this Deed of Trust, or (2) dedicate the Water Rights to a water utility company regulated by the State of Nevada Public Utility Commission in exchange for an "intent to serve" or a "will serve" letter for the Real Property.

11.    In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural, and the term Beneficiary shall mean the holder and owner, including pledges, of the Note secured hereby, whether or not named as a beneficiary herein, or, if the Note has been pledged, the pledges thereof.

12.    By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums to be secured or to declare default for failure so to pay.

13.    Covenants Numbers 1, 3, 4, 5, 6, 7, 8 and 9 of Section 107.030 of the Nevada Revised Statutes ("NRS") are hereby adopted and made a part of this Deed of Trust. With regard to Covenant No. 4 of NRS Section 107.030, regarding interest due for any sums advanced by Trustee or Beneficiary, the interest rate on these sums shall be 8.5%, or, if such sums are advanced, while Trustor is in default hereunder, the interest rate on these sums shall be 12%. Such provisions so incorporated shall have the same force and effect as those specifically set forth herein.

14.    This Deed of Trust shall constitute a security agreement pursuant to the Nevada Uniform Commercial Code (the "UCC") for any portion of the property which, under applicable law, may be subject to a security interest pursuant to the UCC (hereinafter referred to as

C:\Documents and Settings\aklinzing\Local Settings\Temporary Internet Files\OLK612\Water Rights Deed of Trust 8-13-07 Final.doc
Page 4 of 7 Pages

692205

"Personal Property"), and Trustor hereby grant to Beneficiary a security interest in the Personal Property.  Any reproduction of this Deed of Trust or of any other security agreement or financing statement shall be sufficient as a financing statement.

        15.     The undersigned Trustor requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to them at the address set forth above.

        IN WITNESS WHEREOF, the Trustor has executed this Agreement as of the date first set forth above.

**TRUSTOR:**

Willow Creek Holdings, LLC
By: Aram Maissian, Inc., Manager

By: _____
        Aram Maissian, President

_____ACKNOWLEDGEMENT FOLLOWS ON NEXT PAGE_____

692205

## ACKNOWLEDGEMENT

STATE OF NEVADA          )
                         ) ss.
COUNTY OF CLARK          )


This instrument was acknowledged before me on August 13, 2007 by Aram Maissian as President of Aram Maissian, Inc, Manager of Willow Creek Holdings, LLC.



_Nicole Lee P_____
Notary Public in and for Said County and State

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
NICOLE LEE PRINE
Appt. No. 07-2079-1
My Appt. Expires March 1, 2011

692205

**EXHIBIT A**
**Water Rights**

A total of 1,802.87 acre feet annual duty described as follows:

A total of 1,802.87 acre feet annual duty (586,980,217.5 Gallons per year) diversion rate under application (permit) 47074, 46309, 46310, 46316, 46317, 46324, 46325, 46326, and 52367.

Which apply to: Nye County Assessor's Parcel Numbers 039-651-01, 039-511-26039-541-13, 039-552-09, 039-591-15, 039-601-01, 039-621-08, 039-661-01, 039-681-08, 039-691-34, 039-704-09, 039-731-01, 039-741-01, 039-751-07, 039-761-01, 039-783-07, 039-821-19 and 039-651-02 being further described legally on the  2  page description attached to this Exhibit A.

692205

All of Lots 128 through 131 in Block 17 of Calvada Valley Subdivision Unit No. 7, as recorded on February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada.

Excepting therefrom all of Mount Charleston Golf Estates - Phase 2, as shown on map thereof recorded July 27, 1983 as File No. 87401, in the Office of the County Recorder of Nye Count, Nevada.

Further excepting therefrom that portion described as follows:

Commencing at the Southwest Quarter corner of Lot 13 in Block 17 of Calvada Valley Subdivision Unit No. 7, said point being the true point of beginning.

Thence North 76°39'29" East a distance of 69.50 feet; thence South 12°53'08" East a distance of 23.44 feet; thence curving to the right along a curve concave to the West, having a radius of 18.50 feet, through a central angle of 86°50'44", an arc length of 28.04 feet; thence South 73°57'36" West a distance of 53.80 feet; thence curving to the right along a curve concave to the East, having a radius of 24.00 feet, through a central angle of 83°54'25", an arc length of 35.15 feet; thence North 22°07'59" West a distance of 20.30 feet; thence North 69°11'32" East a distance of 30.26 feet to the true point of beginning.

Also

All of Block 35 of Calvada Valley Subdivision Unit No. 7, recorded February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada, and that portion of Lot 132 in Block 35 of Calvada Valley Subdivision Unit No. 7, more particularly described as Parcel 132, as shown on that certain Parcel Map recorded June 13, 1994 as File No. 354169 and by that Boundary Line Adjustment Map recorded April 4, 1995 as File No. 369979, in the Office of the County Recorder of Nye County, Nevada.

Excepting therefrom Lots 1 through 125 in Block 35 of Calvada Valley Subdivision Unit No. 7, recorded February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada.

Further excepting therefrom Lots 141 and 142 in Block 35 of Amended Plat of Calvada Valley Subdivision Unit No. 7, Block 35, Lot 127, as recorded December 28, 1993 as Document No. 345009, in the Office of the County Recorder of Nye County, Nevada.

692205

Further excepting therefrom Lots 134 and 140 in Block 35 of Amended Plat of Calvada Valley Subdivision Unit No. 7, Block 35, Lot 132, as recorded December 28, 1993 as Document No. 345010, in the Office of the County Recorder of Nye County, Nevada.

Further excepting therefrom that portion conveyed to Utilities, Inc. of Central Nevada, by Quitclaim Deed recorded April 11, 2002 as Document No. 533579, in the Office of the County Recorder of Nye County, Nevada.

Also

All of Block 42 of Calvada Valley Subdivision Unit No. 7, recorded February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada.

Excepting therefrom Lots 1 through 73 in Block 42 of Calvada Valley Subdivision Unit No. 7, recorded February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada.

Further excepting therefrom Lots 78 and 79 in Block 42 of Amended Plat of Calvada Valley Subdivision Unit No. 7, Block 42, Lot 76 as recorded December 28, 1993 as Document No. 345011, in the Office of the County Recorder of Nye County, Nevada.

Also

All of Block 49 of Calvada Valley Subdivision Unit No. 7, recorded February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada.

Excepting therefrom Lots 1 through 61 in Block 49 of Calvada Valley Subdivision Unit No. 7, recorded February 5, 1973 as Document No. 36023, in the Office of the County Recorder of Nye County, Nevada.

Further excepting therefrom Lots 64 through 66 in Block 49 of Amended Plat of Calvada Valley Subdivision Unit No. 7, Block 49, Lot 63 as recorded December 28, 1993 as Document No. 345008, in the Office of the County Recorder of Nye County, Nevada.

The above metes and bounds description appeared previously in that certain document recorded January 25, 2000 as Instrument No. 486379, in the Office of the County Recorder of Nye County, Nevada.

I HEREBY CERTIFY THAT IF IMPRESSED WITH THE RAISED SEAL OF THE NYE COUNTY RECORDER THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL RECORD ON FILE IN THIS OFFICE.

OCT 12 2009

BYRON P. FOSTER COUNTY RECORDER
NYE COUNTY, NEVADA
Per NRS 239 Sec. 6 the SSN may be redacted, but in no way affects the legality of the document.

# EXHIBIT 2

# EXHIBIT 2

**From:** Brian Kunzi <bkunzi@co.nye.nv.us>
**Date:** March 19, 2013, 11:49:34 AM EDT
**To:** Laura Granier <lgranier@lionelsawyer.com>
**Subject: RE: Willowcreek**

I am briefing the Commissioners in closed session today.  I need the agreements before I can put this on the Board agenda for approval.

Brian

-----Original Message-----
From: Laura Granier [mailto:lgranier@lionelsawyer.com]
Sent: Tuesday, March 19, 2013 7:27 AM
To: Brian Kunzi
Subject: Willowcreek

Brian,

I understand willow creek is not on the BOCC agenda.  Are we still moving forward as we discussed when we met with the trustee's lawyer?

Sent from my iPhone
This e-mail message is a confidential communication from the law firm of Lionel Sawyer & Collins and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702-383-8888 and delete this e-mail message and any attachments from your workstation or network mail system.

**Jenny Sparks**

| | |
|---|---|
| **From:** | Robert Atkinson <Robert@nv-lawfirm.com> |
| **Sent:** | Thursday, March 28, 2013 2:08 PM |
| **To:** | Ryan Andersen; Laura Granier |
| **Subject:** | Good news re NCC |

Ryan/Laura,

I spoke with Brian Kunzi and he said that he can get it onto the County Commissioner's next public agenda on April 16.

To do that, he will need the written deal (which requires the writeup previously discussed with Laura re: easements etc.) finalized by April 11, which is two weeks from now.

If passed by the NCC on the 16th, then the County would be in a position to take over the irrigation and non-pond maintenance right after plan confirmation.

-Robert

_____

**Robert Atkinson, Esq.**

**Attorney**

☎ **Office:** (702) 614-0600
✉ **Email:** robert@nv-lawfirm.com
☎ **Fax:** (702) 614-0647

**8965 South Eastern Ave Suite 350
Las Vegas, NV 89123**

Notice: If this email was sent to a client or prospective client,
then it is a PRIVILEGED and CONFIDENTIAL communication.

1

**Jenny Sparks**

| | |
|---|---|
| **From:** | Jenny Sparks |
| **Sent:** | Thursday, April 11, 2013 4:14 PM |
| **To:** | bkunzi@co.nye.nv.us |
| **Cc:** | Laura Granier |
| **Subject:** | Draft Easement |
| **Attachments:** | EASEMENT AGREEMENT.doc |

Mr. Kunzi,

Laura Granier asked that I forward to you the attached DRAFT Grant of Easement and Indemnity/Hold Harmless Agreement for your review.  The attached is subject to our client's review and approval but in the interest of timing Laura wanted to provide it to you now.  Laura will get back to you as soon as possible if our client has any comments and she looks forward to receiving your comments.

~ Jenny

LIONEL SAWYER & COLLINS

**JENNY SPARKS**          E-Mail          Web Site
**Secretary to Laura K. Granier, Esq. and**
**Courtney Miller O'Mara, Esq.**

**1100 Bank of America Plaza**
**50 West Liberty St.**
**Reno, NV  89501**

**Direct - 775-788-8652**
**Main - 775-788-8666**
**Fax  -  775-788-8682**

**APNs: 039-651-01, 039-511-26,**
**039-541-13, 039-552-09, 039-591-15,**
**039-601-01, 039-621-08, 039-661-01,**
**039-681-08, 039-691-34, 039-704-09,**
**039-731-01, 039-741-01, 039-751-07,**
**039-761-01, 039-783-07, 039-821-19,**
**and 039-651-02**

**Recording      requested**
**and    when    recorded**
**return to:**
Laura Granier, Esq.
Lionel Sawyer & Collins
50  W.  Liberty  Street,
Suite 1100
Reno, NV 89501

### GRANT OF EASEMENT AND INDEMNITY/HOLD HARMLESS AGREEMENT

This Grant of Easement and Indemnity/Hold Harmless Agreement ("Agreement") is made as of this ___ day of April, 2013, by Utilities, Inc. of Central Nevada ("Grantor") for the benefit of the County of Nye, a political subdivision of the State of Nevada ("Grantee").

Whereas, Grantor is seeking to become the owner of the property described on Exhibit A to this Agreement (the "Burdened Property"), which property is commonly known as the Willow Creek Golf Course;

Whereas, Grantor will only become the owner of the Burdened Property if its acquisition of such property is approved by the Public Utilities Commission of Nevada and proposed ownership and control of the property formerly commonly known as the Willow Creek Golf Course is approved relative to Grantor's Discharge Permit by the Nevada Department of Environmental Protection (collectively, the "State Approvals"); and

Whereas, Grantee desires to obtain an easement over the portion of the Burdened Property described on Exhibit B hereto (the "Easement Area") if and when Grantor acquires the Property for the purposes described below.

Now, therefore, for good and valuable consideration, the receipt of which is hereby confirmed, Grantor and Grantee agrees as follows:

1. The easement to be granted hereunder will not become effective and this instrument shall not be recorded unless and until:

Cee/12245/easement agreement.doc

     a.  Grantor is the owner of the Burdened Property and the State Approvals have been granted;

     b.  The Bankruptcy Court in case number 12-22484 has issued an order approving Grantor's ownership of the Burdened Property

     c.  Grantee's County Commission has approved this Agreement in its entirety;

2.  Upon satisfaction of the foregoing conditions and recordation of this document in the real property records of Nye County, Nevada, the following will become effective:

     a.  Grantor hereby grants to Grantee a non-exclusive easement over the Easement Area for the purpose of allowing the public to use the Easement Area for a park and related recreational purposes. Notwithstanding the foregoing, Grantee's use of the Easement Area is limited as follows:

          i.  Grantee's development of and use of the Easement Area may not interfere with Grantor's use of the Easement Area for discharge of treated effluent as set forth in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit number NEV89063. To that end, Grantee will provide a reasonably detailed notice to Grantor describing any proposed development or use (or change of existing approved use) of the Easement Area by Grantee. Grantor will have 30 days to approve such use (which approval will not be unreasonably withheld, conditioned or delayed). If Grantor elects to disapprove such development or use, Grantor will provide Grantee with a reasonably detailed notice describing its reasons for disapproval so that Grantee may amend its proposed development or use of the Easement Area in a manner that would be acceptable to Grantor. If Grantor fails to disapprove the development or use, Grantee's proposed development or use will be deemed disapproved, but Grantor will retain the obligation to provide reasonably detailed reasons for disapproval to Grantee. Grantee acknowledges and agrees that it is essential to Grantor's use of the Easement Area described above that the ponds currently located on the Easement Area be maintained substantially in the condition they are today. Thus, Grantor's disapproval of any use or development of the Easement Area by Grantee that impacts Grantor's use of the ponds for storage of effluent will, in all circumstances, be deemed reasonable.

Cee/12245/easement agreement.doc

ii.  If (a) Grantee's use of the Easement Area as a public park or for related recreational purposed is discontinued for a period of over 360 days in any 720-day period, or (b) Grantee breaches its obligations hereunder and such breach continues for 30 days after notice of breach from Grantor, the Easement and all future obligations of the parties (other than indemnity and hold harmless obligations that relate to a period prior to termination, which obligations will survive) hereunder will, upon notice of discontinuance issued by Grantor (or its successors or assigns) and recorded in the real property records of Nye County, Nevada, terminate without further action on the part of either party.  Notwithstanding the foregoing, if a breach specified in a notice from Grantor given pursuant to subsection (b), above, cannot reasonably be cured within the above 30-day period, so long as Grantee commences cure within such 30-day period, diligently pursues cure and does cure within 90 days after the date of Grantor's notice, the Easement and future obligations of the parties will not terminate.  Upon any such termination, any and all improvements constructed by Grantee upon the Easement Area will, without further action, become the property of Grantor.  Grantee will be entitled for the 30-day period following termination to remove any and all private property of Grantee's from the Easement Area.  If it fails to do so, such private property will, on the 31st day, become the property of Grantor.

iii.  Other than as expressly set forth in this Grant of Easement and Indemnity Agreement, Grantee will be solely responsible for the costs of any development and maintenance of the Easement Area, including installing irrigation and other infrastructure and acquisition of water rights.  Grantee will also be responsible for maintaining the ponds located on the Easement Area so as to avoid organic contamination of such ponds as set forth in NDEP regulations and statutes and any other applicable law.

iv.  Grantor will provide such water as is reasonably necessary for blending and, notwithstanding the provisions of subsection c., above, maintaining adequate water levels in the ponds located on the Easement Area, including the costs to operate and maintain the pump house that will deliver water to the Easement Area for irrigation (but not for human consumption).

v.  Grantee will be responsible for transmission of effluent discharged from Waste Water Treatment Plant No. 3 as required under that certain Tri-Partite Agreement and Lakeview Water Agreement dated June 18, 2004 and attached hereto as Exhibit [ ] and as may be necessary to provide

continued storage for any water including treated effluent discharged from Waste Water Treatment Plant 3.

vi.   Grantee acknowledges and agrees that any and all portions of the Property, including the Easement Area, but expressly excluding the parcel described on Exhibit C to this Agreement, will remain available to Grantor, its successors and assigns, for the discharge of effluent from Waste Water Treatment Plant 3, and to Grantee for transmission and discharge of effluent from Waste Water Treatment Plant 3 so long as such treatment and discharge is conducted in accordance with all applicable federal and state laws relating to human health and the environment.

vii.  The parties acknowledge that nothing in this Grant of Easement and Indemnity/Hold Harmless Agreement will affect the provisions of that certain Tri-Partite Agreement, dated as of January 24, 2000, recorded in the real property records of Nye County, Nevada, as document number 486378, which agreement runs with the land and remains in full force and effect.

viii. Grantee will indemnify, defend and hold Grantor, its successors, assigns, officers, directors, agents and employees ("Indemnified Parties"), harmless from and against any loss, cost, claim or damage (including attorneys' fees and costs) it may incur that arise from or in connection with Grantee's use or development of the Easement Area or breach of this Agreement, including without limitation, any such loss, cost, claim or damage an Indemnified Party may incur that arises from a member of the public's entry onto or use of the Easement Area for a park or related recreational purposes, other than any such loss, cost, claim or damage that arises solely from the grossly negligent or intentional acts of an Indemnified Party. Grantee shall provide for a general liability insurance policy that covers Grantee for loss, cost, claim or damage to persons or property, and will cause Grantor to be named as an additional insured under such policy.

ix.   Grantee acknowledges and agrees that its use of the Easement Area removes most if not all of the value of the Easement Area from Grantor and, consequently, (a) the assessed value of the Easement Area will be zero; or (b) if for any reason the assessed value of the Easement area is not zero, Grantee will be solely responsible for payment of any property taxes related thereto. If the Easement Area does not constitute a full legal parcel or parcels, property taxes will be apportioned on a pro

rata basis between the portion of the Easement Area that does not constitute a full legal parcel and the remaining portion of the legal parcel of which such portion of the Easement Area constitutes a part.  By way of example, but not limitation, if a portion of the Easement Area constitutes 4 acres of a full legal parcel and the remaining portion of the legal parcel constitutes an additional four acres, Grantor's liability for property taxes on the legal parcel will be 50% of what Grantor's liability for property taxes would be in the absence of the easement granted hereby.

x.  This Grant of Easement and Indemnity/Hold Harmless Agreement is personal to Grantee.  Grantee will not assign its rights hereunder to any person, entity, governmental entity, agency or subdivision and any attempted assignment will be null and void absent the written consent of Grantor, given or withheld in its sole discretion.  The burden of the easement granted hereby will run with the Easement Area and be binding on Grantor's successors and assigns.

3.  Any and all exhibits hereto are incorporated herein as if fully set forth herein.

4.  This instrument may be executed in two or more counterparts, which, when taken together, will constitute one and the same instrument.  Any signature page of this instrument may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart identical in form thereto, but having attached to it one or more additional signature pages.  The parties contemplate that they may be executing counterparts of this instrument transmitted by facsimile and agree and intend that a signature transmitted through a facsimile machine will bind the party so signing with the same effect as though the signature were an original signature.

5.  Each party represents that it has all necessary power and authority to enter into and perform its obligations hereunder.

6.  The parties hereto acknowledge that each has been given the opportunity to independently review this instrument with legal counsel, or has the requisite experience and sophistication to understand, interpret and agree to the particular language of the provisions hereof.  In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this instrument will not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the party drafting this instrument.

7.  This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior or

contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein. No supplements, modifications, waivers or terminations of this instrument will be binding unless executed in writing by the parties to be bound thereby. No waiver of any provisions of this instrument will be deemed or will constitute a waiver of any other provision herein (whether or not similar) nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

[Signatures appear on following page]

Cee/12245/easement agreement.doc

[Signature page to Grant of Easement and Indemnity Agreement]

In witness whereof, the undersigned set their hands as of the date first set forth above.

Nye County Commission

By:_____

Printed:_____

Title: Chair

Approved as to form by District Attorney's office, Nye County, Nevada:

_____

Printed:_____

Title:_____

Utilities, Inc. of Nevada, a Nevada corporation

By:_____

Printed:_____

Title:_____

Exhibit A

Description of Burdened Property



Exhibit B

Description of Easement Area



Cee/12245/easement agreement.doc

Exhibit C

Description of Parcel 16



## Jenny Sparks

| | |
|---|---|
| **From:** | Laura Granier |
| **Sent:** | Wednesday, May 01, 2013 9:56 AM |
| **To:** | Jenny Sparks; bkunzi@co.nye.nv.us |
| **Subject:** | RE: Draft Easement |
| **Attachments:** | EASEMENT AGREEMENT - DRAFT.pdf |

Brian –

Following up on this, my client asked for one point of clarification which is included in redlined in the attached.  Please let me know if you have any comments or concerns with the draft and, if so, maybe we can set up a call to discuss?

Thanks,
Laura

**From:** Jenny Sparks
**Sent:** Thursday, April 11, 2013 4:14 PM
**To:** bkunzi@co.nye.nv.us
**Cc:** Laura Granier
**Subject:** Draft Easement

Mr. Kunzi,

Laura Granier asked that I forward to you the attached DRAFT Grant of Easement and Indemnity/Hold Harmless Agreement for your review.  The attached is subject to our client's review and approval but in the interest of timing Laura wanted to provide it to you now.  Laura will get back to you as soon as possible if our client has any comments and she looks forward to receiving your comments.

~ Jenny

## LIONEL SAWYER & COLLINS

**JENNY SPARKS**          E-Mail          Web Site
**Secretary to Laura K. Granier, Esq. and
Courtney Miller O'Mara, Esq.**

**1100 Bank of America Plaza
50 West Liberty St.
Reno, NV  89501**

**Direct - 775-788-8652
Main - 775-788-8666
Fax  -  775-788-8682**

1

**APNs: 039-651-01, 039-511-26,**
**039-541-13, 039-552-09, 039-591-15,**
**039-601-01, 039-621-08, 039-661-01,**
**039-681-08, 039-691-34, 039-704-09,**
**039-731-01, 039-741-01, 039-751-07,**
**039-761-01, 039-783-07, 039-821-19,**
**and 039-651-02**

**Recording      requested**
**and   when   recorded**
**return to:**
Laura Granier, Esq.
Lionel Sawyer & Collins
50  W.  Liberty  Street,
Suite 1100
Reno, NV 89501

## GRANT OF EASEMENT AND INDEMNITY/HOLD HARMLESS AGREEMENT

This Grant of Easement and Indemnity/Hold Harmless Agreement ("Agreement") is made as of this ___ day of April, 2013, by Utilities, Inc. of Central Nevada ("Grantor") for the benefit of the County of Nye, a political subdivision of the State of Nevada ("Grantee").

Whereas, Grantor is seeking to become the owner of the property described on Exhibit A to this Agreement (the "Burdened Property"), which property is commonly known as the Willow Creek Golf Course;

Whereas, Grantor will only become the owner of the Burdened Property if its acquisition of such property is approved by the Public Utilities Commission of Nevada and proposed ownership and control of the property formerly commonly known as the Willow Creek Golf Course is approved relative to Grantor's Discharge Permit by the Nevada Department of Environmental Protection (collectively, the "State Approvals"); and

Whereas, Grantee desires to obtain an easement over the portion of the Burdened Property described on Exhibit B hereto (the "Easement Area") if and when Grantor acquires the Property for the purposes described below.

Now, therefore, for good and valuable consideration, the receipt of which is hereby confirmed, Grantor and Grantee agrees as follows:

1. The easement to be granted hereunder will not become effective and this instrument shall not be recorded unless and until:

    a.  Grantor is the owner of the Burdened Property and the State Approvals have been granted;

    b.  The Bankruptcy Court in case number 12-22484 has issued an order approving Grantor's ownership of the Burdened Property

    c.  Grantee's County Commission has approved this Agreement in its entirety;

2.  Upon satisfaction of the foregoing conditions and recordation of this document in the real property records of Nye County, Nevada, the following will become effective:

    a.  Grantor hereby grants to Grantee a non-exclusive easement over the Easement Area for the purpose of allowing the public to use the Easement Area for a park and related recreational purposes. Notwithstanding the foregoing, Grantee's use of the Easement Area is limited as follows:

        i.  Grantee's development of and use of the Easement Area may not interfere with Grantor's use of the Easement Area for discharge of treated effluent as set forth in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit number NEV89063. To that end, Grantee will provide a reasonably detailed notice to Grantor describing any proposed development or use (or change of existing approved use) of the Easement Area by Grantee. Grantor will have 30 days to approve such use (which approval will not be unreasonably withheld, conditioned or delayed). If Grantor elects to disapprove such development or use, Grantor will provide Grantee with a reasonably detailed notice describing its reasons for disapproval so that Grantee may amend its proposed development or use of the Easement Area in a manner that would be acceptable to Grantor. If Grantor fails to disapprove the development or use, Grantee's proposed development or use will be deemed disapproved, but Grantor will retain the obligation to provide reasonably detailed reasons for disapproval to Grantee. Grantee acknowledges and agrees that it is essential to Grantor's use of the Easement Area described above that the ponds currently located on the Easement Area be maintained substantially in the condition they are today. Thus, Grantor's disapproval of any use or development of the Easement Area by Grantee that impacts Grantor's use of the ponds for storage of effluent will, in all circumstances, be deemed reasonable.

ii.   If (a) Grantee's use of the Easement Area as a public park or for related recreational purposed is discontinued for a period of over 360 days in any 720-day period, or (b) Grantee breaches its obligations hereunder and such breach continues for 30 days after notice of breach from Grantor, the Easement and all future obligations of the parties (other than indemnity and hold harmless obligations that relate to a period prior to termination, which obligations will survive) hereunder will, upon notice of discontinuance issued by Grantor (or its successors or assigns) and recorded in the real property records of Nye County, Nevada, terminate without further action on the part of either party.  Notwithstanding the foregoing, if a breach specified in a notice from Grantor given pursuant to subsection (b), above, cannot reasonably be cured within the above 30-day period, so long as Grantee commences cure within such 30-day period, diligently pursues cure and does cure within 90 days after the date of Grantor's notice, the Easement and future obligations of the parties will not terminate.  Upon any such termination, any and all improvements constructed by Grantee upon the Easement Area will, without further action, become the property of Grantor.  Grantee will be entitled for the 30-day period following termination to remove any and all private property of Grantee's from the Easement Area.  If it fails to do so, such private property will, on the 31st day, become the property of Grantor.

iii.  Other than as expressly set forth in this Grant of Easement and Indemnity Agreement, Grantee will be solely responsible for the costs of any development and maintenance of the Easement Area, including installing irrigation and other infrastructure and acquisition of water rights.  Grantee will also be responsible for maintaining the ponds located on the Easement Area so as to avoid organic contamination of such ponds as set forth in NDEP regulations and statutes and any other applicable law.

iv.   Grantor will provide such water as is reasonably necessary for blending and, notwithstanding the provisions of subsection c., above, maintaining adequate water levels in the ponds located on the Easement Area, including the costs to operate and maintain the pump house that will deliver water to the Easement Area for irrigation (but not for human consumption).  Grantee shall ensure water does not exceed maximum levels in the ponds as set forth by NDEP in all relevant discharge permits.

v.    Grantee will be responsible for transmission of effluent discharged from Waste Water Treatment Plant No. 3 as

required under that certain Tri-Partite Agreement and Lakeview Water Agreement dated June 18, 2004 and attached hereto as Exhibit [ ] and as may be necessary to provide continued storage for any water including treated effluent discharged from Waste Water Treatment Plant 3.

vi.  Grantee acknowledges and agrees that any and all portions of the Property, including the Easement Area, but expressly excluding the parcel described on Exhibit C to this Agreement, will remain available to Grantor, its successors and assigns, for the discharge of effluent from Waste Water Treatment Plant 3, and to Grantee for transmission and discharge of effluent from Waste Water Treatment Plant 3 so long as such treatment and discharge is conducted in accordance with all applicable federal and state laws relating to human health and the environment.

vii. The parties acknowledge that nothing in this Grant of Easement and Indemnity/Hold Harmless Agreement will affect the provisions of that certain Tri-Partite Agreement, dated as of January 24, 2000, recorded in the real property records of Nye County, Nevada, as document number 486378, which agreement runs with the land and remains in full force and effect.

viii. Grantee will indemnify, defend and hold Grantor, its successors, assigns, officers, directors, agents and employees ("Indemnified Parties"), harmless from and against any loss, cost, claim or damage (including attorneys' fees and costs) it may incur that arise from or in connection with Grantee's use or development of the Easement Area or breach of this Agreement, including without limitation, any such loss, cost, claim or damage an Indemnified Party may incur that arises from a member of the public's entry onto or use of the Easement Area for a park or related recreational purposes, other than any such loss, cost, claim or damage that arises solely from the grossly negligent or intentional acts of an Indemnified Party.  Grantee shall provide for a general liability insurance policy that covers Grantee for loss, cost, claim or damage to persons or property, and will cause Grantor to be named as an additional insured under such policy.

ix.  Grantee acknowledges and agrees that its use of the Easement Area removes most if not all of the value of the Easement Area from Grantor and, consequently, (a) the assessed value of the Easement Area will be zero; or (b) if for any reason the assessed value of the Easement area is not zero, Grantee will be

solely responsible for payment of any property taxes related thereto.  If the Easement Area does not constitute a full legal parcel or parcels, property taxes will be apportioned on a pro rata basis between the portion of the Easement Area that does not constitute a full legal parcel and the remaining portion of the legal parcel of which such portion of the Easement Area constitutes a part.  By way of example, but not limitation, if a portion of the Easement Area constitutes 4 acres of a full legal parcel and the remaining portion of the legal parcel constitutes an additional four acres, Grantor's liability for property taxes on the legal parcel will be 50% of what Grantor's liability for property taxes would be in the absence of the easement granted hereby.

x.  This Grant of Easement and Indemnity/Hold Harmless Agreement is personal to Grantee.  Grantee will not assign its rights hereunder to any person, entity, governmental entity, agency or subdivision and any attempted assignment will be null and void absent the written consent of Grantor, given or withheld in its sole discretion.  The burden of the easement granted hereby will run with the Easement Area and be binding on Grantor's successors and assigns.

3.  Any and all exhibits hereto are incorporated herein as if fully set forth herein.

4.  This instrument may be executed in two or more counterparts, which, when taken together, will constitute one and the same instrument.  Any signature page of this instrument may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart identical in form thereto, but having attached to it one or more additional signature pages.  The parties contemplate that they may be executing counterparts of this instrument transmitted by facsimile and agree and intend that a signature transmitted through a facsimile machine will bind the party so signing with the same effect as though the signature were an original signature.

5.  Each party represents that it has all necessary power and authority to enter into and perform its obligations hereunder.

6.  The parties hereto acknowledge that each has been given the opportunity to independently review this instrument with legal counsel, or has the requisite experience and sophistication to understand, interpret and agree to the particular language of the provisions hereof.  In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this instrument will not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the party drafting this instrument.

7.  This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein.  No supplements, modifications, waivers or terminations of this instrument will be binding unless executed in writing by the parties to be bound thereby.  No waiver of any provisions of this instrument will be deemed or will constitute a waiver of any other provision herein (whether or not similar) nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

[Signatures appear on following page]



Cee/12245/easement agreement.doc

[Signature page to Grant of Easement and Indemnity Agreement]

In witness whereof, the undersigned set their hands as of the date first set forth above.

Nye County Commission

By:_____

Printed:_____

Title: Chair

Approved as to form by District Attorney's office, Nye County, Nevada:

_____

Printed:_____

Title:_____

Utilities, Inc. of Nevada, a Nevada corporation

By:_____

Printed:_____

Title:_____

Exhibit A

Description of Burdened Property



Cee/12245/easement agreement.doc

Exhibit B

Description of Easement Area



Exhibit C

Description of Parcel 16



**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Friday, May 24, 2013 11:02 AM |
| **To:** | Laura Granier |
| **Subject:** | Easement Agreement |

There are many provisions in this draft agreement that are not acceptable. Our disagreement is such that I cannot offer any alternative language. The best I can offer at this time is the general nature of our concerns. If we cannot come to agreement on the underlying issues it will be futile to proceed forward.

The County is seeking the easement to be used for open space, parks, recreational purposes and flood control. Under these uses it is difficult to understand how the use can be "discontinued" resulting in a forfeiture of the easement. The easement must be exclusive to the County subject to UICN's overriding need to disperse treated effluent. The County will not accept any provision that allows UICN to grant other easements to another party or declare our use of the easement abandoned.

I understand the need for UICN to approve any construction within the easement area, but the right to deny any request must be based only on such activities that could reasonable interfere with UICN's use of the area for the discharge of treated effluent. If written objections, with detailed reasons for the denial, are not provided within 30 days then the proposed changes are deemed to be approved.

We made it clear during negotiations that we expected to receive the right to use the water and treated effluent rights on a pro rata basis. We would be willing to use as much effluent as possible. What troubles me about the document is that the County is expected to operate the pond system and maintain the ponds located in the easement area, but not be given the right to use that water. In order for the treatment facility to operate the water needs to go somewhere. The County will not operate your system, maintain your ponds and pay for the water you need to dump onto the ground. The land UICN is getting in the bankruptcy has water rights that can be used only on the golf course property. Those water rights are of no value to anyone outside the course and come at no cost to UICN. The County will not agree to provide additional water rights to UICN.

The provisions regarding taxes are intriguing. I understand your intentions, but I am not certain we can do it in this manner. I need to give this more thought on how we can accomplish what is suggested in the draft. One problem is that there is some value since the draft purports to be a non-exclusive easement and UICN is benefiting from the continued use of the property.



*Brian T. Kunzi*
**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us

1

**Jenny Sparks**

| | |
|---|---|
| **From:** | Laura Granier |
| **Sent:** | Wednesday, May 29, 2013 9:56 AM |
| **To:** | Brian Kunzi |
| **Subject:** | RE: Easement Agreement |

Brian,

It seems to me we should be able to work through all of these issues.  I will take a stab at revising and send you to review.

Laura

**From:** Brian Kunzi [mailto:bkunzi@co.nye.nv.us]
**Sent:** Friday, May 24, 2013 11:02 AM
**To:** Laura Granier
**Subject:** Easement Agreement

There are many provisions in this draft agreement that are not acceptable.  Our disagreement is such that I cannot offer any alternative language.  The best I can offer at this time is the general nature of our concerns.  If we cannot come to agreement on the underlying issues it will be futile to proceed forward.

The County is seeking the easement to be used for open space, parks, recreational purposes and flood control.  Under these uses it is difficult to understand how the use can be "discontinued" resulting in a forfeiture of the easement.  The easement must be exclusive to the County subject to UICN's overriding need to disperse treated effluent.  The County will not accept any provision that allows UICN to grant other easements to another party or declare our use of the easement abandoned.

I understand the need for UICN to approve any construction within the easement area, but the right to deny any request must be based only on such activities that could reasonable interfere with UICN's use of the area for the discharge of treated effluent.  If written objections, with detailed reasons for the denial, are not provided within 30 days then the proposed changes are deemed to be approved.

We made it clear during negotiations that we expected to receive the right to use the water and treated effluent rights on a pro rata basis.  We would be willing to use as much effluent as possible.  What troubles me about the document is that the County is expected to operate the pond system and maintain the ponds located in the easement area, but not be given the right to use that water.  In order for the treatment facility to operate the water needs to go somewhere.  The County will not operate your system, maintain your ponds and pay for the water you need to dump onto the ground.  The land UICN is getting in the bankruptcy has water rights that can be used only on the golf course property.  Those water rights are of no value to anyone outside the course and come at no cost to UICN.  The County will not agree to provide additional water rights to UICN.

The provisions regarding taxes are intriguing.  I understand your intentions, but I am not certain we can do it in this manner.  I need to give this more thought on how we can accomplish what is suggested in the draft.  One problem is that there is some value since the draft purports to be a non-exclusive easement and UICN is benefiting from the continued use of the property.



*Brian T. Kunzi*

**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us

**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Wednesday, May 29, 2013 9:59 AM |
| **To:** | Laura Granier |
| **Subject:** | RE: Easement Agreement |

Laura,

That sounds encouraging.  I generally believe any mountain can be scaled, but I must admit I was a bit pessimistic after reviewing the draft.  Let me know if there any details you think we need to discuss.

Brian

**From:** Laura Granier [mailto:lgranier@lionelsawyer.com]
**Sent:** Wednesday, May 29, 2013 9:56 AM
**To:** Brian Kunzi
**Subject:** RE: Easement Agreement

Brian,

It seems to me we should be able to work through all of these issues.  I will take a stab at revising and send you to review.

Laura

**From:** Brian Kunzi [mailto:bkunzi@co.nye.nv.us]
**Sent:** Friday, May 24, 2013 11:02 AM
**To:** Laura Granier
**Subject:** Easement Agreement

There are many provisions in this draft agreement that are not acceptable.  Our disagreement is such that I cannot offer any alternative language.  The best I can offer at this time is the general nature of our concerns.  If we cannot come to agreement on the underlying issues it will be futile to proceed forward.

The County is seeking the easement to be used for open space, parks, recreational purposes and flood control.  Under these uses it is difficult to understand how the use can be "discontinued" resulting in a forfeiture of the easement.  The easement must be exclusive to the County subject to UICN's overriding need to disperse treated effluent.  The County will not accept any provision that allows UICN to grant other easements to another party or declare our use of the easement abandoned.

I understand the need for UICN to approve any construction within the easement area, but the right to deny any request must be based only on such activities that could reasonable interfere with UICN's use of the area for the discharge of treated effluent.  If written objections, with detailed reasons for the denial, are not provided within 30 days then the proposed changes are deemed to be approved.

We made it clear during negotiations that we expected to receive the right to use the water and treated effluent rights on a pro rata basis.  We would be willing to use as much effluent as possible.  What troubles me about the document is that the County is expected to operate the pond system and maintain the ponds located in the easement area, but not be given the right to use that water.  In order for the treatment facility to operate the water needs to go

somewhere.  The County will not operate your system, maintain your ponds and pay for the water you need to dump onto the ground.  The land UICN is getting in the bankruptcy has water rights that can be used only on the golf course property.  Those water rights are of no value to anyone outside the course and come at no cost to UICN.  The County will not agree to provide additional water rights to UICN.

The provisions regarding taxes are intriguing.  I understand your intentions, but I am not certain we can do it in this manner.  I need to give this more thought on how we can accomplish what is suggested in the draft.  One problem is that there is some value since the draft purports to be a non-exclusive easement and UICN is benefiting from the continued use of the property.



*Brian T. Kunzi*

**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us

This e-mail message is a confidential communication from the law firm of Lionel Sawyer & Collins and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702-383-8888 and delete this e-mail message and any attachments from your workstation or network mail system.

**Jenny Sparks**

**From:** Laura Granier
**Sent:** Wednesday, May 29, 2013 2:49 PM
**To:** bkunzi@co.nye.nv.us
**Subject:** Easement Agreement - Willow Creek
**Attachments:** EASEMENT AGREEMENT 5-29 (WB)(js).pdf

Brian,

I attach a redlined version of the draft easement agreement in which I have attempted to address the issues you raised in Friday's email.  This now provides the County an exclusive easement and also priority right to use of the effluent on a pro rata basis subject to Lakeview's rights.  I also revised the construction approval provisions to address your comments and the provisions for "discontinuance" of use of the easement.  I do think UICN needs some relief in the event the County failed to move the water – not that I expect that to happen.  So, I propose in the revised draft that UICN would be entitled to injunctive relief.  If that is not acceptable to you, I am open to suggestions about how we address that issue.

If you have any questions or would like to discuss please give me a call.  If you have concerns with this draft hopefully we can talk through them and get them resolved quickly.

Thanks,
Laura

LIONEL SAWYER & COLLINS

**LAURA K. GRANIER**          E-Mail          Web Site
**Shareholder**

**1100 Bank of America Plaza**
**50 West Liberty St.**
**Reno, NV  89501**

**Main - 775-788-8666**          **Direct - 775-788-8602**
**Fax  -  775-788-8682**          **Mobile - 775-750-9295**

**APNs: 039-651-01, 039-511-26,
039-541-13, 039-552-09, 039-591-15,
039-601-01, 039-621-08, 039-661-01,
039-681-08, 039-691-34, 039-704-09,
039-731-01, 039-741-01, 039-751-07,
039-761-01, 039-783-07, 039-821-19,
and 039-651-02**

**Recording      requested
and    when    recorded
return to:**
Laura Granier, Esq.
Lionel Sawyer & Collins
50   W.   Liberty   Street,
Suite 1100
Reno, NV 89501

### GRANT OF EASEMENT AND INDEMNITY/HOLD HARMLESS AGREEMENT

This Grant of Easement and Indemnity/Hold Harmless Agreement ("Agreement") is made as of this ___ day of May, 2013, by Utilities, Inc. of Central Nevada ("Grantor") for the benefit of the County of Nye, a political subdivision of the State of Nevada ("Grantee").

Whereas, Grantor is seeking to become the owner of the property described on Exhibit A to this Agreement (the "Burdened Property"), which property is commonly known as the Willow Creek Golf Course;

Whereas, Grantor will only become the owner of the Burdened Property if its acquisition and remediation of such property is approved by the Public Utilities Commission of Nevada and proposed ownership, control and remediation of the property formerly commonly known as the Willow Creek Golf Course is approved relative to Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection (collectively, the "State Approvals"); and

Whereas, Grantee desires to obtain an easement over the portion of the Burdened Property described on Exhibit B hereto (the "Easement Area") if and when Grantor acquires the Property for the purposes described below.

Now, therefore, for good and valuable consideration, the receipt of which is hereby confirmed, Grantor and Grantee agrees as follows:

1. The easement to be granted hereunder will not become effective and this instrument shall not be recorded unless and until:

| Deleted: April |
| Deleted: and |

Cee/12245/easement agreement.doc

    a.  Grantor is the owner of the Burdened Property and the State Approvals have been granted;

    b.  The Bankruptcy Court in case number 12-22484 has issued an order approving Grantor's ownership of the Burdened Property;

    c.  Grantee's County Commission has approved this Agreement in its entirety;

2.  Upon satisfaction of the foregoing conditions and recordation of this document in the real property records of Nye County, Nevada, the following will become effective:

    a.  Grantor hereby grants to Grantee an exclusive easement over the Easement Area for the purpose of allowing the public to use the Easement Area for a park and related recreational purposes subject to Grantor's continuing ownership and use for discharge of treated effluent from Waste Water Treatment Plant No. 3 and any utility infrastructure and/or transmission or water lines or pipes underlying or within the Easement Area.  Notwithstanding the foregoing, Grantee's use of the Easement Area is limited as follows:

        i.  Grantee's development of and use of the Easement Area may not interfere with Grantor's use of the Easement Area for discharge of treated effluent as set forth in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit number NEV89063 (as it may be amended or reissued).  To that end, Grantee will provide a reasonably detailed notice to Grantor describing any proposed development or use (or change of existing approved use) of the Easement Area by Grantee.  Grantor will have 30 days to approve such use (which approval will not be unreasonably withheld, conditioned or delayed).  If Grantor elects to disapprove such development or use based on proposed activities that could interfere with UICN's use of the area for discharge of treated effluent, Grantor will provide Grantee with a reasonably detailed notice describing its reasons for disapproval so that Grantee may amend its proposed development or use of the Easement Area in a manner that would be acceptable to Grantor. If Grantor fails to disapprove the development or use, Grantee's proposed development or use will be deemed approved.  Grantee acknowledges and agrees that it is essential to Grantor's use of the Easement Area described above that the ponds currently located on the Easement Area be maintained substantially in the condition they are today.  Thus, Grantor's disapproval of any use or development of the Easement Area by Grantee that impacts

| Deleted: non- |
| --- |

| Deleted: dis |
| --- |

| Deleted: , but Grantor will retain the obligation to provide reasonably detailed reasons for disapproval to Grantee |
| --- |

2 | P a g e

Grantor's use of the ponds for storage of effluent will, in all circumstances, be deemed reasonable.

ii.  If Grantee breaches its obligations hereunder and such breach continues for 30 days after notice of breach from Grantor and such breach jeopardizes or impairs Grantor's ability to continue operation of Waste Water Treatment Plant Number 3 ("WWTP 3"), then Grantor shall be entitled to injunctive relief requiring such measures to ensure continued operation of WWTP 3 and compliance with Grantor's Discharge Permit.

iii.  Other than as expressly set forth in this Grant of Easement and Indemnity Agreement, Grantee will be solely responsible for the costs of any development and maintenance of the Easement Area, including installing irrigation and other infrastructure and acquisition of water rights.  Grantee will also be responsible for maintaining the ponds located on the Easement Area including any ponds partially located within the Easement Area so as to avoid organic contamination of such ponds as set forth in NDEP regulations and statutes and any other applicable law.

iv.  Grantor will provide such water as is reasonably necessary for maintaining adequate water levels in the ponds located on the Easement Area as required by NDEP (subject to any Public Utilities Commission of Nevada approvals or requirements), including the costs to operate and maintain the pump house that will deliver water to the Easement Area for irrigation (but not for human consumption).  Grantee shall ensure water does not exceed maximum levels in the ponds as set forth by NDEP in all relevant discharge permits.

v.  Grantee will be responsible for transmission of effluent discharged from Waste Water Treatment Plant No. 3 as required under that certain Tri-Partite Agreement and Lakeview Water Agreement dated June 18, 2004 and attached hereto as Exhibit [ ] and as may be necessary to provide continued storage for any water including treated effluent discharged from Waste Water Treatment Plant 3.  Grantee will have a first priority right to use of such treated effluent in the Easement Area provided that (i) the Lakeview Golf Course has received up to 425,000 gallons per day (at Lakeview's discretion) or adequate treated effluent as required under the Lakeview Water Agreement or any amendment to the Lakeview Water Agreement; and, (ii) such first priority right to use of the treated effluent shall be limited based on a pro rata basis using the number of acres within the Easement Area as compared to the total remaining acres owned by Grantor.

**Deleted:** (a) Grantee's use of the Easement Area as a public park or for related recreational purposed is discontinued for a period of over 360 days in any 720-day period, or (b)

**Deleted:** the Easement and all future obligations of the parties (other than indemnity and hold harmless obligations that relate to a period prior to termination, which obligations will survive) hereunder will, upon notice of discontinuance issued by Grantor (or its successors or assigns) and recorded in the real property records of Nye County, Nevada, terminate without further action on the part of either party. Notwithstanding the foregoing, if a breach specified in a notice from Grantor given pursuant to subsection (b), above, cannot reasonably be cured within the above 30-day period, so long as Grantee commences cure within such 30-day period, diligently pursues cure and does cure within 90 days after the date of Grantor's notice, the Easement and future obligations of the parties will not terminate.  Upon any such termination, any and all improvements constructed by Grantee upon the Easement Area will, without further action, become the property of Grantor.  Grantee will be entitled for the 30-day period following termination to remove any and all private property of Grantee's from the Easement Area.  If it fails to do so, such private property will, on the 31st day, become the property of Grantor.

**Deleted:** blending and, notwithstanding the provisions of subsection c., above,

Cee/12245/easement agreement.doc

vi.  Grantee acknowledges and agrees that any and all portions of the Property, including the Easement Area, but expressly excluding the parcel described on Exhibit C to this Agreement, will remain available to Grantor, its successors and assigns, for the discharge of effluent from Waste Water Treatment Plant 3, and to Grantee for transmission and discharge of effluent from Waste Water Treatment Plant 3 so long as such treatment and discharge is conducted in accordance with all applicable federal and state laws relating to human health and the environment.  Grantor acknowledges and agrees that it shall not grant any easements to other parties that would interfere with Grantee's use of the Easement Area as set forth herein.

vii.  The parties acknowledge that nothing in this Grant of Easement and Indemnity/Hold Harmless Agreement will affect the provisions of that certain Tri-Partite Agreement, dated as of January 24, 2000, recorded in the real property records of Nye County, Nevada, as document number 486378, which agreement runs with the land and remains in full force and effect.

viii.  Grantee will indemnify, defend and hold Grantor, its successors, assigns, officers, directors, agents and employees ("Indemnified Parties"), harmless from and against any loss, cost, claim or damage (including attorneys' fees and costs) it may incur that arise from or in connection with Grantee's use or development of the Easement Area or breach of this Agreement, including without limitation, any such loss, cost, claim or damage an Indemnified Party may incur that arises from a member of the public's entry onto or use of the Easement Area for a park or related recreational purposes, other than any such loss, cost, claim or damage that arises solely from the grossly negligent or intentional acts of an Indemnified Party.  Grantee shall provide for a general liability insurance policy that covers Grantee for loss, cost, claim or damage to persons or property, and will cause Grantor to be named as an additional insured under such policy.

ix.  Grantee acknowledges and agrees that its use of the Easement Area removes most if not all of the value of the Easement Area from Grantor and, consequently, (a) the assessed value of the Easement Area will be zero; or (b) if for any reason the assessed value of the Easement area is not zero, Grantee will be solely responsible for payment of any property taxes related thereto.  If the Easement Area does not constitute a full legal parcel or parcels, property taxes will be apportioned on a pro rata basis between the portion of the Easement Area that does

not constitute a full legal parcel and the remaining portion of the legal parcel of which such portion of the Easement Area constitutes a part. By way of example, but not limitation, if a portion of the Easement Area constitutes 4 acres of a full legal parcel and the remaining portion of the legal parcel constitutes an additional four acres, Grantor's liability for property taxes on the legal parcel will be 50% of what Grantor's liability for property taxes would be in the absence of the easement granted hereby.

x. This Grant of Easement and Indemnity/Hold Harmless Agreement is personal to Grantee. Grantee will not assign its rights hereunder to any person, entity, governmental entity, agency or subdivision and any attempted assignment will be null and void absent the written consent of Grantor, given or withheld in its sole discretion. The burden of the easement granted hereby will run with the Easement Area and be binding on Grantor's successors and assigns.

3. Any and all exhibits hereto are incorporated herein as if fully set forth herein.

4. This instrument may be executed in two or more counterparts, which, when taken together, will constitute one and the same instrument. Any signature page of this instrument may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart identical in form thereto, but having attached to it one or more additional signature pages. The parties contemplate that they may be executing counterparts of this instrument transmitted by facsimile and agree and intend that a signature transmitted through a facsimile machine will bind the party so signing with the same effect as though the signature were an original signature.

5. Each party represents that it has all necessary power and authority to enter into and perform its obligations hereunder.

6. The parties hereto acknowledge that each has been given the opportunity to independently review this instrument with legal counsel, or has the requisite experience and sophistication to understand, interpret and agree to the particular language of the provisions hereof. In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this instrument will not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the party drafting this instrument.

7. This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, negotiations and discussions,

whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein. No supplements, modifications, waivers or terminations of this instrument will be binding unless executed in writing by the parties to be bound thereby. No waiver of any provisions of this instrument will be deemed or will constitute a waiver of any other provision herein (whether or not similar) nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

[Signatures appear on following page]



[Signature page to Grant of Easement and Indemnity Agreement]

      In witness whereof, the undersigned set their hands as of the date first set forth above.

Nye County Commission

By:_____

Printed:_____

Title: Chair

Approved as to form by District Attorney's office, Nye County, Nevada:

_____

Printed:_____

Title:_____

Utilities, Inc. of Nevada, a Nevada corporation

By:_____

Printed:_____

Title:_____

Exhibit A

Description of Burdened Property



Cee/12245/easement agreement.doc

Exhibit B

Description of Easement Area



9 | P a g e

Cee/12245/easement agreement.doc

Exhibit C

Description of Parcel 16



Cee/12245/easement agreement.doc

**Jenny Sparks**

| | |
|---|---|
| **From:** | Laura Granier |
| **Sent:** | Friday, June 07, 2013 2:15 PM |
| **To:** | bkunzi@co.nye.nv.us |
| **Subject:** | FW: Easement Agreement - Willow Creek |
| **Attachments:** | EASEMENT AGREEMENT 5-29 (WB)(js).pdf |

Brian –

I am just checking in with you to see if you have comments on this draft.  Robert Atkinson mentioned that you may still have things to discuss with me but hoped to get this on the agenda for BOCC consideration on 6/18?  I look forward to hearing from you so we can move this forward.

Thanks,
Laura

**From:** Laura Granier
**Sent:** Wednesday, May 29, 2013 2:49 PM
**To:** bkunzi@co.nye.nv.us
**Subject:** Easement Agreement - Willow Creek

Brian,

I attach a redlined version of the draft easement agreement in which I have attempted to address the issues you raised in Friday's email.  This now provides the County an exclusive easement and also priority right to use of the effluent on a pro rata basis subject to Lakeview's rights.  I also revised the construction approval provisions to address your comments and the provisions for "discontinuance" of use of the easement.  I do think UICN needs some relief in the event the County failed to move the water – not that I expect that to happen.  So, I propose in the revised draft that UICN would be entitled to injunctive relief.  If that is not acceptable to you, I am open to suggestions about how we address that issue.

If you have any questions or would like to discuss please give me a call.  If you have concerns with this draft hopefully we can talk through them and get them resolved quickly.

Thanks,
Laura

LIONEL SAWYER & COLLINS

**LAURA K. GRANIER**        E-Mail        Web Site
**Shareholder**

**1100 Bank of America Plaza**
**50 West Liberty St.**
**Reno, NV  89501**

**Main - 775-788-8666**        **Direct - 775-788-8602**
**Fax  -  775-788-8682**        **Mobile - 775-750-9295**

**APNs: 039-651-01, 039-511-26,**
**039-541-13, 039-552-09, 039-591-15,**
**039-601-01, 039-621-08, 039-661-01,**
**039-681-08, 039-691-34, 039-704-09,**
**039-731-01, 039-741-01, 039-751-07,**
**039-761-01, 039-783-07, 039-821-19,**
**and 039-651-02**

**Recording       requested**
**and    when    recorded**
**return to:**
Laura Granier, Esq.
Lionel Sawyer & Collins
50 W. Liberty Street,
Suite 1100
Reno, NV 89501

### GRANT OF EASEMENT AND INDEMNITY/HOLD HARMLESS AGREEMENT

This Grant of Easement and Indemnity/Hold Harmless Agreement ("Agreement") is made as of this ___ day of May, 2013, by Utilities, Inc. of Central Nevada ("Grantor") for the benefit of the County of Nye, a political subdivision of the State of Nevada ("Grantee").

> **Deleted:** April

Whereas, Grantor is seeking to become the owner of the property described on Exhibit A to this Agreement (the "Burdened Property"), which property is commonly known as the Willow Creek Golf Course;

Whereas, Grantor will only become the owner of the Burdened Property if its acquisition and remediation of such property is approved by the Public Utilities Commission of Nevada and proposed ownership, control and remediation of the property formerly commonly known as the Willow Creek Golf Course is approved relative to Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection (collectively, the "State Approvals"); and

> **Deleted:** and

Whereas, Grantee desires to obtain an easement over the portion of the Burdened Property described on Exhibit B hereto (the "Easement Area") if and when Grantor acquires the Property for the purposes described below.

Now, therefore, for good and valuable consideration, the receipt of which is hereby confirmed, Grantor and Grantee agrees as follows:

1. The easement to be granted hereunder will not become effective and this instrument shall not be recorded unless and until:

a. Grantor is the owner of the Burdened Property and the State Approvals have been granted;

b. The Bankruptcy Court in case number 12-22484 has issued an order approving Grantor's ownership of the Burdened Property;

c. Grantee's County Commission has approved this Agreement in its entirety;

2. Upon satisfaction of the foregoing conditions and recordation of this document in the real property records of Nye County, Nevada, the following will become effective:

a. Grantor hereby grants to Grantee an exclusive easement over the Easement Area for the purpose of allowing the public to use the Easement Area for a park and related recreational purposes subject to Grantor's continuing ownership and use for discharge of treated effluent from Waste Water Treatment Plant No. 3 and any utility infrastructure and/or transmission or water lines or pipes underlying or within the Easement Area. Notwithstanding the foregoing, Grantee's use of the Easement Area is limited as follows:

    i. Grantee's development of and use of the Easement Area may not interfere with Grantor's use of the Easement Area for discharge of treated effluent as set forth in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit number NEV89063 (as it may be amended or reissued). To that end, Grantee will provide a reasonably detailed notice to Grantor describing any proposed development or use (or change of existing approved use) of the Easement Area by Grantee. Grantor will have 30 days to approve such use (which approval will not be unreasonably withheld, conditioned or delayed). If Grantor elects to disapprove such development or use based on proposed activities that could interfere with UICN's use of the area for discharge of treated effluent, Grantor will provide Grantee with a reasonably detailed notice describing its reasons for disapproval so that Grantee may amend its proposed development or use of the Easement Area in a manner that would be acceptable to Grantor. If Grantor fails to disapprove the development or use, Grantee's proposed development or use will be deemed approved. Grantee acknowledges and agrees that it is essential to Grantor's use of the Easement Area described above that the ponds currently located on the Easement Area be maintained substantially in the condition they are today. Thus, Grantor's disapproval of any use or development of the Easement Area by Grantee that impacts

| Deleted: non- |
|---|

| Deleted: dis |
|---|
| **Deleted:** , but Grantor will retain the obligation to provide reasonably detailed reasons for disapproval to Grantee |

2 | P a g e

Grantor's use of the ponds for storage of effluent will, in all circumstances, be deemed reasonable.

ii. If Grantee breaches its obligations hereunder and such breach continues for 30 days after notice of breach from Grantor and such breach jeopardizes or impairs Grantor's ability to continue operation of Waste Water Treatment Plant Number 3 ("WWTP 3"), then Grantor shall be entitled to injunctive relief requiring such measures to ensure continued operation of WWTP 3 and compliance with Grantor's Discharge Permit.

iii. Other than as expressly set forth in this Grant of Easement and Indemnity Agreement, Grantee will be solely responsible for the costs of any development and maintenance of the Easement Area, including installing irrigation and other infrastructure and acquisition of water rights. Grantee will also be responsible for maintaining the ponds located on the Easement Area including any ponds partially located within the Easement Area so as to avoid organic contamination of such ponds as set forth in NDEP regulations and statutes and any other applicable law.

iv. Grantor will provide such water as is reasonably necessary for maintaining adequate water levels in the ponds located on the Easement Area as required by NDEP (subject to any Public Utilities Commission of Nevada approvals or requirements), including the costs to operate and maintain the pump house that will deliver water to the Easement Area for irrigation (but not for human consumption). Grantee shall ensure water does not exceed maximum levels in the ponds as set forth by NDEP in all relevant discharge permits.

v. Grantee will be responsible for transmission of effluent discharged from Waste Water Treatment Plant No. 3 as required under that certain Tri-Partite Agreement and Lakeview Water Agreement dated June 18, 2004 and attached hereto as Exhibit [ ] and as may be necessary to provide continued storage for any water including treated effluent discharged from Waste Water Treatment Plant 3. Grantee will have a first priority right to use of such treated effluent in the Easement Area provided that (i) the Lakeview Golf Course has received up to 425,000 gallons per day (at Lakeview's discretion) or adequate treated effluent as required under the Lakeview Water Agreement or any amendment to the Lakeview Water Agreement; and, (ii) such first priority right to use of the treated effluent shall be limited based on a pro rata basis using the number of acres within the Easement Area as compared to the total remaining acres owned by Grantor.

**Deleted:** (a) Grantee's use of the Easement Area as a public park or for related recreational purposed is discontinued for a period of over 360 days in any 720-day period, or (b)

**Deleted:** the Easement and all future obligations of the parties (other than indemnity and hold harmless obligations that relate to a period prior to termination, which obligations will survive) hereunder will, upon notice of discontinuance issued by Grantor (or its successors or assigns) and recorded in the real property records of Nye County, Nevada, terminate without further action on the part of either party. Notwithstanding the foregoing, if a breach specified in a notice from Grantor given pursuant to subsection (b), above, cannot reasonably be cured within the above 30-day period, so long as Grantee commences cure within such 30-day period, diligently pursues cure and does cure within 90 days after the date of Grantor's notice, the Easement and future obligations of the parties will not terminate. Upon any such termination, any and all improvements constructed by Grantee upon the Easement Area will, without further action, become the property of Grantor. Grantee will be entitled for the 30-day period following termination to remove any and all private property of Grantee's from the Easement Area. If it fails to do so, such private property will, on the 31st day, become the property of Grantor.

**Deleted:** blending and, notwithstanding the provisions of subsection c., above,

vi.   Grantee acknowledges and agrees that any and all portions of the Property, including the Easement Area, but expressly excluding the parcel described on Exhibit C to this Agreement, will remain available to Grantor, its successors and assigns, for the discharge of effluent from Waste Water Treatment Plant 3, and to Grantee for transmission and discharge of effluent from Waste Water Treatment Plant 3 so long as such treatment and discharge is conducted in accordance with all applicable federal and state laws relating to human health and the environment.  Grantor acknowledges and agrees that it shall not grant any easements to other parties that would interfere with Grantee's use of the Easement Area as set forth herein.

vii.  The parties acknowledge that nothing in this Grant of Easement and Indemnity/Hold Harmless Agreement will affect the provisions of that certain Tri-Partite Agreement, dated as of January 24, 2000, recorded in the real property records of Nye County, Nevada, as document number 486378, which agreement runs with the land and remains in full force and effect.

viii. Grantee will indemnify, defend and hold Grantor, its successors, assigns, officers, directors, agents and employees ("Indemnified Parties"), harmless from and against any loss, cost, claim or damage (including attorneys' fees and costs) it may incur that arise from or in connection with Grantee's use or development of the Easement Area or breach of this Agreement, including without limitation, any such loss, cost, claim or damage an Indemnified Party may incur that arises from a member of the public's entry onto or use of the Easement Area for a park or related recreational purposes, other than any such loss, cost, claim or damage that arises solely from the grossly negligent or intentional acts of an Indemnified Party.  Grantee shall provide for a general liability insurance policy that covers Grantee for loss, cost, claim or damage to persons or property, and will cause Grantor to be named as an additional insured under such policy.

ix.   Grantee acknowledges and agrees that its use of the Easement Area removes most if not all of the value of the Easement Area from Grantor and, consequently, (a) the assessed value of the Easement Area will be zero; or (b) if for any reason the assessed value of the Easement area is not zero, Grantee will be solely responsible for payment of any property taxes related thereto.  If the Easement Area does not constitute a full legal parcel or parcels, property taxes will be apportioned on a pro rata basis between the portion of the Easement Area that does

not constitute a full legal parcel and the remaining portion of the legal parcel of which such portion of the Easement Area constitutes a part. By way of example, but not limitation, if a portion of the Easement Area constitutes 4 acres of a full legal parcel and the remaining portion of the legal parcel constitutes an additional four acres, Grantor's liability for property taxes on the legal parcel will be 50% of what Grantor's liability for property taxes would be in the absence of the easement granted hereby.

    x.   This Grant of Easement and Indemnity/Hold Harmless Agreement is personal to Grantee. Grantee will not assign its rights hereunder to any person, entity, governmental entity, agency or subdivision and any attempted assignment will be null and void absent the written consent of Grantor, given or withheld in its sole discretion. The burden of the easement granted hereby will run with the Easement Area and be binding on Grantor's successors and assigns.

3.   Any and all exhibits hereto are incorporated herein as if fully set forth herein.

4.   This instrument may be executed in two or more counterparts, which, when taken together, will constitute one and the same instrument. Any signature page of this instrument may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart identical in form thereto, but having attached to it one or more additional signature pages. The parties contemplate that they may be executing counterparts of this instrument transmitted by facsimile and agree and intend that a signature transmitted through a facsimile machine will bind the party so signing with the same effect as though the signature were an original signature.

5.   Each party represents that it has all necessary power and authority to enter into and perform its obligations hereunder.

6.   The parties hereto acknowledge that each has been given the opportunity to independently review this instrument with legal counsel, or has the requisite experience and sophistication to understand, interpret and agree to the particular language of the provisions hereof. In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this instrument will not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the party drafting this instrument.

7.   This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, negotiations and discussions,

Cee/12245/easement agreement.doc

whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein. No supplements, modifications, waivers or terminations of this instrument will be binding unless executed in writing by the parties to be bound thereby. No waiver of any provisions of this instrument will be deemed or will constitute a waiver of any other provision herein (whether or not similar) nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

[Signatures appear on following page]



Cee/12245/easement agreement.doc

[Signature page to Grant of Easement and Indemnity Agreement]

In witness whereof, the undersigned set their hands as of the date first set forth above.

Nye County Commission

By:_____

Printed:_____

Title: Chair

Approved as to form by District Attorney's office, Nye County, Nevada:

_____

Printed:_____

Title:_____

Utilities, Inc. of Nevada, a Nevada corporation

By:_____

Printed:_____

Title:_____

7 | P a g e

Exhibit A

Description of Burdened Property



Exhibit B

Description of Easement Area



Exhibit C

Description of Parcel 16



**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Friday, June 07, 2013 2:56 PM |
| **To:** | Laura Granier |
| **Subject:** | Fwd: Willow Creek |

I sent this yesterday, but it did not go right through. My system shows it was sent, but obviously it did not make it. Please review and comment. Although I am suppose to be on vacation I do monitor my emails and will stay on top of this as I want to have a final answer by the next meeting on the 18th.

Brian T. Kunzi
Nye County District Attorney
Sent from my iPad

Begin forwarded message:

> **From:** Brian Kunzi <bkunzi@co.nye.nv.us>
> **Date:** June 6, 2013, 8:46:11 AM PDT
> **To:** Laura Granier <lgranier@lionelsawyer.com>
> **Subject: Willow Creek**
>
> I am out of the office until June 13th, but I am staying in touch by email.  I have some changes to the latest draft you sent, however, there is a lingering question to which I need a straight answer.  UICN seems to be insisting that the County will be required to acquire water rights for any use that may be required on the easement property.  If this is their position then there is no need to proceed any further as the County will not participate in this effort to keep this bankruptcy plan together.
>
> The property UICN intends to gain from this bankruptcy comes with water rights that can be used only on the golf course.  The County is intending to operate the delivery service, an expense that would be paid by UICN but for the involvement of the County.  The water is to be used on the property for the benefit of the general public at no cost to UICN.  Please advise if this is going to be a deal breaker.
>
> Brian T. Kunzi
> Nye County District Attorney
> Sent from my iPad

**Jenny Sparks**

| | |
|---|---|
| **From:** | Laura Granier |
| **Sent:** | Thursday, June 13, 2013 10:07 AM |
| **To:** | Brian Kunzi |
| **Subject:** | RE: Willow Creek |

Brian,

If in the future the County has a need to apply to UICN for service for watering of green space on the park easement parcels, UICN agrees the water credits from water rights appurtenant to those parcels would be available to support such service.  To the extent those water rights are enough to support the service there would be no need for the County to go out and acquire additional water rights.

Does that alleviate your concern?

**From:** Brian Kunzi [mailto:bkunzi@co.nye.nv.us]
**Sent:** Friday, June 07, 2013 2:56 PM
**To:** Laura Granier
**Subject:** Fwd: Willow Creek

I sent this yesterday, but it did not go right through. My system shows it was sent, but obviously it did not make it. Please review and comment. Although I am suppose to be on vacation I do monitor my emails and will stay on top of this as I want to have a final answer by the next meeting on the 18th.

Brian T. Kunzi
Nye County District Attorney
Sent from my iPad

Begin forwarded message:

> **From:** Brian Kunzi <bkunzi@co.nye.nv.us>
> **Date:** June 6, 2013, 8:46:11 AM PDT
> **To:** Laura Granier <lgranier@lionelsawyer.com>
> **Subject: Willow Creek**
>
> I am out of the office until June 13th, but I am staying in touch by email.  I have some changes to the latest draft you sent, however, there is a lingering question to which I need a straight answer.  UICN seems to be insisting that the County will be required to acquire water rights for any use that may be required on the easement property.  If this is their position then there is no need to proceed any further as the County will not participate in this effort to keep this bankruptcy plan together.
>
> The property UICN intends to gain from this bankruptcy comes with water rights that can be used only on the golf course.  The County is intending to operate the delivery service, an expense that would be paid by UICN but for the involvement of the County.  The water is to be used on the property for the benefit of the general public at no cost to UICN.  Please advise if this is going to be a deal breaker.
>
> Brian T. Kunzi

Nye County District Attorney
Sent from my iPad

**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Thursday, June 13, 2013 3:44 PM |
| **To:** | Laura Granier |
| **Subject:** | RE: Willow Creek |

Laura,

I understand that if we need any water in excess of the water rights that are appurtenant to those parcels the County would be required to be provided service as under normal circumstances.  We need to add a paragraph that covers this situation.  I did have some other changes, but I was waiting to get a response to our number one concern.  I will provide my changes to you tomorrow.  Thank you for your response.

Brian

**From:** Laura Granier [mailto:lgranier@lionelsawyer.com]
**Sent:** Thursday, June 13, 2013 10:07 AM
**To:** Brian Kunzi
**Subject:** RE: Willow Creek

Brian,

If in the future the County has a need to apply to UICN for service for watering of green space on the park easement parcels, UICN agrees the water credits from water rights appurtenant to those parcels would be available to support such service.  To the extent those water rights are enough to support the service there would be no need for the County to go out and acquire additional water rights.

Does that alleviate your concern?

**From:** Brian Kunzi [mailto:bkunzi@co.nye.nv.us]
**Sent:** Friday, June 07, 2013 2:56 PM
**To:** Laura Granier
**Subject:** Fwd: Willow Creek

I sent this yesterday, but it did not go right through. My system shows it was sent, but obviously it did not make it. Please review and comment. Although I am suppose to be on vacation I do monitor my emails and will stay on top of this as I want to have a final answer by the next meeting on the 18th.

Brian T. Kunzi
Nye County District Attorney
Sent from my iPad

Begin forwarded message:

> **From:** Brian Kunzi <bkunzi@co.nye.nv.us>
> **Date:** June 6, 2013, 8:46:11 AM PDT
> **To:** Laura Granier <lgranier@lionelsawyer.com>
> **Subject: Willow Creek**

I am out of the office until June 13th, but I am staying in touch by email.  I have some changes to the latest draft you sent, however, there is a lingering question to which I need a straight answer.  UICN seems to be insisting that the County will be required to acquire water rights for any use that may be required on the easement property.  If this is their position then there is no need to proceed any further as the County will not participate in this effort to keep this bankruptcy plan together.

The property UICN intends to gain from this bankruptcy comes with water rights that can be used only on the golf course.  The County is intending to operate the delivery service, an expense that would be paid by UICN but for the involvement of the County.  The water is to be used on the property for the benefit of the general public at no cost to UICN.  Please advise if this is going to be a deal breaker.

Brian T. Kunzi
Nye County District Attorney
Sent from my iPad

This e-mail message is a confidential communication from the law firm of Lionel Sawyer & Collins and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702-383-8888 and delete this e-mail message and any attachments from your workstation or network mail system.

# LIONEL SAWYER & COLLINS

ATTORNEYS AT LAW

1100 BANK OF AMERICA PLAZA

50 WEST LIBERTY STREET

RENO, NEVADA 89501

(775) 788-8666

FAX (775) 788-8682

lsc@lionelsawyer.com

www.lionelsawyer.com

SAMUEL S. LIONEL
GRANT SAWYER
(1918-1996)
JON R. COLLINS
(1923-1987)
RICHARD H. BRYAN
JEFFREY P. ZUCKER
PAUL R. HEJMANOWSKI
ROBERT D. FAISS
A. WILLIAM MAUPIN
DAVID N. FREDERICK
RODNEY M. JEAN
TODD TOUTON
LYNDA S. MABRY
MARK H. GOLDSTEIN
KIRBY J. SMITH
COLLEEN A. DOLAN
JENNIFER A. SMITH
DAN R. REASER
PAUL E. LARSEN
ALLEN J. WILT
LYNN S. FULSTONE
RORY J. REID
DAN C. McGUIRE

JOHN E. DAWSON
FRED D. "PETE" GIBSON, III
CHARLES H. McCREA JR.
GREGORY E. SMITH
MALANI L. KOTCHKA
LESLIE BRYAN HART
CRAIG E. ETEM
TODD E. KENNEDY
MATTHEW E. WATSON
JOHN M. NAYLOR
WILLIAM J. McKEAN
ELIZABETH BRICKFIELD
GREGORY R. GEMIGNANI
LINDA M. BULLEN
LAURA J. THALACKER
DOREEN SPEARS HARTWELL
LAURA K. GRANIER
MAXIMILIANO D. COUVILLIER III
ERIN FLYNN
JENNIFER ROBERTS
MARK A. CLAYTON
MATTHEW R. POLICASTRO
CHRISTOPHER MATHEWS
PEARL L.GALLAGHER

MEREDITH L. MARKWELL
JENNIFER J. GAYNOR
CHRISTOPHER WALTHER
KEVIN J. HEJMANOWSKI
KETAN D. BHIRUD
ROBERT W. HERNQUIST
COURTNEY MILLER OMARA
BRIAN H. SCHUSTERMAN
MOHAMED A. IQBAL, JR
MARK J. GARDBERG
JAMES B. GIBSON

GREG J. CARLSON
JOHN D. TENNERT
MARLA J. DaVEE
STEVEN C. ANDERSON
RYAN A. ANDERSEN
KATHERINE L. HOFFMAN
VAR LORDAHL, JR.
PHILLIP C. THOMPSON
AMY L. BAKER
JORDAN A. DAVIS
KENDAL L. DAVIS

OF COUNSEL
RICHARD J. MORGAN*
ELLEN WHITTEMORE
PAUL D. BANCROFT

*ADMITTED IN CA ONLY

WRITER'S DIRECT DIAL NUMBER
(775) 788-8602

LGRANIER@LIONELSAWYER.COM

July 22, 2013

### Via Email and U.S. Mail

Brian T. Kunzi, Esq.
Nye County District Attorney
Office Of The Nye County District Attorney
1520 E. Basin Ave.
Pahrump, Nevada 89048

RE:    WILLOW CREEK GOLF COURSE

Dear Brian:

I write this with a sense of urgency relative to the continuing public health and safety issues created by the prior owner of the Willow Creek Golf Course, Caldera P & G and other Jim Scott entities. We remain hopeful that the discussions between Nye County, the trustee for Caldera P & G and UICN earlier this year in the spirit of cooperation to try to find a way to resolve the concerns about the continued lack of maintenance and necessary remediation will prove fruitful. We believe it was the continued cooperation of all of these parties that led to the creation of a plan submitted to and approved by the United States Bankruptcy Court that provides a solution to all involved with the Willow Creek Golf Course, including the citizens of Nye County. Of course, we all understand that plan was subject to necessary regulatory approvals including that of the Nye County Commission relative to the proposed Easement Agreement with UICN, the Public Utilities Commission relative to actions of UICN and the Nevada Division of Environmental Protection also relative to actions of UICN and the relevant discharge permits for Waste Water Treatment Plant 3 and on the Willow Creek Golf Course.

I understood from the trustee's counsel, Robert Atkinson, that it was important to you that I get you a proposed draft of the Easement Agreement by no later than April 11, 2013, and

**LIONEL SAWYER & COLLINS**
ATTORNEYS AT LAW

Brian T. Kunzi, Esq.
July 22, 2013
Page 2

my assistant sent you the first draft of that agreement on that date. We continued moving forward and attended the hearing on May 22, 2013 in the Caldera P & G bankruptcy where UICN, the trustee and Mr. Zucaro all supported approval of the negotiated plan subject to the material condition of receipt of all necessary regulatory approvals. Nye County did not appear at that hearing.

On May 24, 2013, you advised that there were many provisions of the draft Easement Agreement I provided that you found so problematic you would not provide a mark-up to me of the draft. After discussing your feedback with my client, on May 29, 2013 I responded to you that I thought we could work out the issues you identified and would prepare a revised draft for your consideration which I did.

In early June 2013, you advised that you had some changes to the latest draft but there was a lingering question that first had to be resolved about water rights appurtenant to the golf course. I discussed the issues you raised about water rights with my client and responded to you on June 13, 2013 and I appreciated your prompt response advising that you would be providing your other proposed changes by June 14, 2013. Both the trustee's counsel and I have reached out to you on a few occasions since then to check on the status of your comments but have not heard back from you.

I now understand that given the lack of response from the County, if this is not resolved in the next few days, the trustee may seek an alternative buyer for the easement the County sought to purchase under the approved plan and file for modification of the plan or, if that is not possible, seek to set aside the plan and sell off the course in pieces. Obviously, UICN has grave concerns about the latter approach.

UICN has worked diligently in seeking the necessary Public Utilities Commission of Nevada approval of the UICN Integrated Resource Plan Amendment necessary for implementation of the plan and also has been working with NDEP toward the steps necessary to implement the plan. The last piece of this remains the Nye County approval and agreement upon the proposed Easement Agreement with Nye County. While we remain hopeful that we will continue forward with the trustee and Nye County and that the approved plan can be implemented, in light of the trustee's intended action, we must set a deadline for the County's provision of comments on the draft Easement Agreement.

Please provide us with your comments on the draft Easement Agreement by no later than Noon on this Friday, July 26, 2013. If we do not hear from you, reluctantly, we will move forward with the understanding that the County is no longer interested in pursuing the plan submitted to and approved by the bankruptcy and will look to other possible alternatives to address this situation which continues to be of great concern to UICN and all involved.

**LIONEL SAWYER & COLLINS**
ATTORNEYS AT LAW


Brian T. Kunzi, Esq.
July 22, 2013
Page 3


I look forward to hearing from you and hope we can continue working cooperatively to resolve this matter.

Very truly yours,

*Laura K. Granier/jes*

Laura K. Granier, Esq.

LKG:jes

**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Tuesday, July 23, 2013 4:22 PM |
| **To:** | Laura Granier |
| **Subject:** | Willow Creek |

Laura,

I am circulating another draft of the agreement with administration within the County, not including any members of the Board of County Commissioners, in the hopes of getting everyone in agreement. This has become a very tricky proposition. There is a faction within the County that believes a private suitor is out there attempting to buy the golf course to put it back into operation. Others object to any deal with UICN as I am sure is a similar problem for you in reverse. I have been involved in lobbying attempts to simply liquidate the property and allow private investors an opportunity to obtain parcels. I hope I will have comments returned to me on my proposed draft by tomorrow. If accepted by the main administration I will forward my draft to you. My efforts thus far has prevented any changes to the basics of the plan. My only fear is the fire that may be generated once I am able to put an agreement before the Board. I regret how long this has taken, but I hope you understand the delicate nature of the politics of this situation.



*Brian T. Kunzi*

**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us

**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Thursday, July 25, 2013 11:23 AM |
| **To:** | Laura Granier; Robert Atkinson |
| **Cc:** | Pamela Webster |
| **Subject:** | Willow Creek |
| **Attachments:** | Grant of Easement - Draft(2).docx |

Dear Laura,

While Nye County desires to continue to participate in a favorable resolution of this bankruptcy, please understand that Nye County is not a party to this bankruptcy. We were asked to participate in an effort to bring a resolution to many issues involved with this bankruptcy. To that end we participated with the Trustee and UICN to attempt to negotiate how the County could provide assistance in resolving some fundamental issues.

You are mistaken in suggesting the County had some urgency to move this matter forward by setting deadlines for you to propose an agreement. My position with the Trustee was I could not take a plan ratification to the Board unless and until we had an agreement regarding the rights the County would be obtaining for the easement area. The deadline to which you make reference in your July 22, 2013, letter was not set by the County. I indicated to the Trustee how much time would be needed to comply with Open Meeting Law requirements if there was any hope of having this agreement approved by the Board.

The agreement we believed we had coming out of that meeting was far different than the proposed draft you prepared. You sent a proposed agreement to which I offered many comments of concern. One of those concerns was the absence of any discussion of the right to use water rights or treated effluent water that would be appurtenant to the easement area. This was our number one requirement for participation as we stated numerous times during our plan negotiation meeting. Your complete avoidance of the granting of any such rights in the proposed agreement sent warning signals regarding whether any of the negotiations were in good faith.

The warning signals were magnified by your proposed re-draft in that once again the agreement was void of any reference to the right to use appurtenant water rights. Your June 13, 2013, email in which you so freely offer the County "water credits from water rights appurtenant to those parcels" makes no sense and offers the County nothing. The urge caused by this seeming brush off of our concerns was to simply pull out of participation and allow liquidation of the parcels under the current zoning restrictions that would accomplish what was desired for flood control purposes in the easement area. In short, the County has the capability of ensuring it accomplishes the goals it sought without spending any money or engaging in any additional entanglements with UICN. While these sentiments were becoming overwhelming, we also were fully aware of the impact this decision would have on the bankruptcy in terms of the value that could be obtained.

Unfortunately I believe you have miscalculated the need for Nye County to obtain the right to use the appurtenant water rights. While I expressed optimism to Mr. Atkinson that we could overcome our differences I was having a very difficult time devising a scheme that would be acceptable to the County. I acknowledge and regret the delays to which I have been a party, but I feel it is important given the statements in your letter for there to be a complete understanding of the dynamics at work. The County will not pay UICN for the use of UICN water on UICN property. This is not a case of easy politics and we feel that the proposals made were anything but responsive to our concerns.

I have attached a red-lined version of your most recent draft. While I have had no discussions with any of the Commissioners this draft has the support of the Administration and I am confident that together we can get it approved

by the Board.  I caution you to review the draft carefully because my secretary was required to re-type the agreement in Word due to the fact you provided only a PDF copy.  There may be inadvertent errors that I did not see.

I made changes to the tax language as proposed.  This is a tricky issue.  The Assessor could cause problems in this area by refusing to assess in accordance with the agreement.  We would be required to battle through the County Board of Equalization and potentially to the State Board of Equalization.  I added language that I thinks will make it easier.  The bottom line is that the County cannot agree to pay any taxes.  While the County could discuss rebating taxes under the control of the County, I cannot envision a scenario in which the Board will agree to be on the hook for taxes owed to the State, School District, Town and other taxing entities.

I am making this a priority and will be available for consultation as needed.  My schedule over the next week is open.  I will be very difficult to connect with, however, starting the following week.  You have stated your piece and I have stated my piece regarding the difficulties that have resulted in the delays.  I do not think it will be productive to continue that debate.  What is done cannot be undone, but I also do not want it to impact on our ultimate goal.  This plan is the best option, but everyone must understand the County will not invest public dollars in this venture without the ability to gain a public benefit.  Obviously nothing can be done on this property without water.  I cannot emphasize enough that if the County cannot use the water rights available then the Administration will not recommend any such agreement to the Board.



*Brian T. Kunzi*
**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us

This Grant of Easement and Indemnity/Hold Harmless Agreement ("Agreement") is made this ___ day of May, 2013, by Utilities, Inc. of Central Nevada ("Grantor") for the benefit of the County of Nye, a political subdivision of the State of Nevada ("Grantee")

Whereas, Grantor is seeking to become the owner of the property described on Exhibit A to this Agreement (the "Burdened Property"), which property is commonly known as the Willow Creek Golf Course;

Whereas, Grantor will only become the owner of the Burdened Property if its acquisition and remediation of such property is approved by the Public Utilities Commission of Nevada and proposed ownership, control and remediation of the property formerly commonly known as the Willow Creek Golf Course is approved relative to Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection (collectively, the "State Approvals"); and

Whereas, Grantee desires to obtain an easement over the portion of the Burdened Property described on Exhibit B hereto (the "Easement Area") if and when Grantor acquired the Property for the purposes described below.

Now, therefore, for good and valuable consideration, the receipt of which is hereby confirmed, Grantor and Grantee agree as follows:

1. The easement to be granted hereunder will not become effective and this instrument shall not be recorded unless and until:

   a. Grantor is the owner of the Burdened Property and State Approvals have been granted;

   b. the Bankruptcy Court in case number 12-22484 has issued an order approving Grantor's ownership of the Burdened Property;

   c. Grantee's County Commission has approved this Agreement in its entirety;

2. Upon satisfaction of the foregoing conditions and recordation of this document in the real property records of Nye County, Nevada, the following will become effective:

   a. Grantor hereby grants to Grantee and exclusive easement over the Easement Area for the purpose of allowing the public to use the Easement Area for a park and related recreational purposes or other open uses subject only to Grantor's continuing ownership and use for discharge of

treated effluent from Waste Water Treatment Plant No. 3 and any utility infrastructure and/or transmission of water lines or pipes underlying or within the Easement Area.  Notwithstanding the foregoing, Grantee's use of the Easement Area is limited as follows:

    i.   Grantee's development of and us of the Easement Area may not interfere with Grantor's obligation to use of the Easement Area for discharge of treated effluent as set forth in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit number NEV89063 (as it may be amended or reissued). To that end, Grantee will provide a reasonably detailed notice to Grantor describing any proposed development or use (or change of existing approved use) of the Easement Area by Grantee.  Grantor will have 30 days to approve such use (which approval will not be unreasonably withheld, conditioned or delayed). If Grantor elects to disapprove such development or use based on proposed activities that could interfere with UICN's use of the area for discharge of treated effluent, Grantor will provide Grantee with a reasonably detailed notice describing its reasons for disapproval so that Grantee may amend its proposed development or use of the Easement Area in a manner that would be acceptable to Grantor.  If Grantor fails to disapprove the development or use within 30 days, Grantee's proposed development or use will be deemed approved.  Grantee acknowledges and agrees that it is essential to Grantor's use of the Easement Area described above that the ponds currently located on the Easement Area be maintained substantially in the condition they are today.  Thus, Grantor's disapproval of any use or development of the Easement Area by Grantee that impacts Grantor's use of the ponds for storage of effluent will, in all circumstances, be deemed reasonable.

    ii.   If Grantee breaches its obligations hereunder and such breach continues for 30 days after notice of breach from Grantor and such breach jeopardizes or impairs Grantor's ability to continue operation of Waste Water Treatment Plant Number 3 ("WWTP 3"), then Grantor shall be entitled to injunctive relief requiring such measures to ensure continued operation of WWTP 3 and compliance with Grantor's Discharge Permit.

iii.  Other than as expressly set forth in this Grant of Easement and Indemnity Agreement, Grantee will be solely responsible for the costs of any development and maintenance of the Easement Area, including installing irrigation and other infrastructure and acquisition of water rights except as otherwise provided for herein.  Grantee agrees to discharge water from the ponds located on the Easement Area, including any ponds partially located within the Easement Area, and other actions in accordance with instructions as provided by Grantor as may be necessary to avoid organic contamination of such ponds as set forth in NDEP regulations and statutes and any other applicable law.

**Deleted:** will also be responsible for maintaining

**Deleted:** so as

iv.  Grantor will provide such water as is reasonably necessary for maintaining adequate water levels in the ponds located on the Easement Area as required by NDEP (subject to any Public Utilities Commission of Nevada approvals or requirements), including the costs to operate and maintain the pump house that will deliver water to the Easement Area for irrigation (but not for human consumption).  Grantee shall ensure water does not exceed maximum levels in the ponds as set forth by NDEP in all relevant discharge permits.

v.  Grantee shall have the right to use water rights attached to the Burdened Property on a pro rata basis using the number of acres within the Easement Area as compared to the total remaining acres owned by Grantor.  The water shall be used only within the Easement Area and cannot be transferred in any form or manner or otherwise encumbered.  The use of said water by Grantee shall be at no expense to Grantor.

vi.  Except as otherwise provided for herein, Grantor shall not interfere, burden or limit the use of the Easement Area by Grantee.  Grantor will provide a reasonably detailed notice to Grantee 30 days in advance of any proposed development or use of the Easement Area as may be necessary for Grantor to discharge treated effluent in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit NEV89063.

vii.  Grantee agrees to operate the distribution system for transmission of effluent discharged from Waste Water Treatment Plant NO. 3 as required under that certain Trip-Partite Agreement and Lakeview Water Agreement dated June 18, 2004 and attached hereto as

**Deleted:** will be responsible

Exhibit [ ] and as may be necessary to provide continued storage for any water including treated effluent discharged from Waste Water Treatment Plant 3 as directed by Grantor.  Grantee will have a first priority right to use of such treated effluent in the Easement area provided that (i) the Lakeview Golf Course has received up to 435,000 gallons per day (at Lakeview's discretion) or adequate treated effluent as required under the Lakeview Water Agreement or any amendment to the Lakeview Water Agreement; and (ii) such first priority right to use of the treated effluent shall be limited based on a pro rata basis using  the number of acres within the Easement Area as compared to the total remaining acres owned by Grantor. Nothing herein contained is intended to impose on Grantee any responsibility for compliance with any applicable NDEP permits, which sole responsibility for compliance shall be retained by Grantor.

viii.   Grantee acknowledges and agrees that any and all portions of the Property, including the Easement Area, but expressly excluding the parcel described on Exhibit C to this Agreement, will remain available to Grantor, its successors and assigns, for the discharge of effluent from Waste Water Treatment Plant 3, and to Grantee for transmission and discharge of effluent from Waste Water Treatment Plant 3 so long as such treatment and discharge is conducted in accordance with all applicable federal and state laws relating to human health and the environment.  Grantor acknowledges and agrees that it shall not grant any easements, licenses, permits or other interests in property to other parties that would interfere with Grantee's use of the Easement Area as set forth herein.

ix.   The parties acknowledge that nothing in this Grant of Easement and Indemnity/Hold Harmless Agreement will affect the provisions of that certain Tri-Partite Agreement, dated as of January 24, 2000, recorded in the real property records of Nye County, Nevada, as document number 486378, which agreement runs with the land and remains in full force and effect.

x.   Grantee will indemnify, defend and hold Grantor, its successors, assigns, officers, directors, agents and employees ("Indemnified Parties"), harmless from and against any loss, cost, claim or

damage (including attorneys' fees and costs) it may incur that arise from or in connection with Grantee's use or development of the Easement Area or breach of this Agreement, including without limitation, any such loss, cost, claim or damage an Indemnified Party may incur that arises from a member of the public's entry onto or use of the Easement Area for a park or related recreational purposes, other than any such loss, cost, claim or damage that arises from the acts of an Indemnified Party.  Grantee shall provide for a general liability insurance policy that covers Grantee for loss, cost, claim or damage to persons or property, and will cause Grantor to be named as an additional insured under such policy.

> **Deleted:** solely
>
> **Deleted:** grossly negligent or intentional

xi.    Grantee acknowledges the transfer of interest hereunder is intended to transfer the full effective beneficial use of the Easement Area.  The exclusive use of the Easement by Grantee for public parks, recreational areas and other public open uses is intended to reduce the value of the property to Grantor to a nominal value such that for purposes of determining taxable value the Easement Area shall be considered under the ownership and control of Grantee.  Nothing herein contained shall prevent Grantor from being taxed on the value of the Easement Area in the event the easement shall revert back to Grantor or the Easement Area or any portion thereof shall be put to a beneficial use other than for the discharge of treated effluent water as provided for in this agreement.  If the Easement Area does not constitute a full legal parcel or parcels, property taxes will be apportioned on a pro rata basis between the portion of the Easement Area that does not constitute a full legal parcel and the remaining portion of the legal parcel of which such portion of the Easement Area constitutes a part.  By way of example, but not limitation, if a portion of the Easement Area constitutes 4 acres of a full legal parcel and the remaining portion of the legal parcel constitutes an additional four acres, Grantor's liability for the property taxes on the legal parcel will be 50% of what Grantor's liability for the property taxes would be in the absence of the easement granted hereby.

> **Deleted:** and agrees that its use of the Easement Area removes most if not all of the value of the Easement Area from Grantor and consequently, (a) the assessed value of the Easement Area will be zero; or (b) if for any reason the assessed value of the Easement Area is not zero, Grantee will be solely responsible for payment of any property taxes related thereto.

xii.    This Grant of Easement and Indemnity/Hold Harmless Agreement is personal to Grantee.  Grantee will not assign its rights hereunder to any person, entity, governmental entity, agency or subdivision and any attempted assignment will be null and void absent the

written consent of Grantor, given or withheld at its sole discretion. The burden of the easement granted hereby will run with the Easement Area and be binding on Grantor's successors and assigns.

3.  Any and all exhibits hereto are incorporated herein as if sully set forth herein.

4.  This instrument may be executed in two or more counterparts, which, when taken together, will constitute one and the same instrument.  Any signature page of this instrument may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart identical in form thereto, but having attached to it one or more additional signature pages.  The parties contemplate that they may be executing counterparts of this instrument transmitted by facsimile and agree and intend that a signature transmitted through a facsimile machine will bind the party so signing with the same effect as though the signature were an original signature.

5.  Each party represents that it has all necessary power and authority to enter into and perform its obligations hereunder.

6.  The parties hereto acknowledge that each has been given the opportunity to independently review this instrument with legal counsel, or has the requisite experience and sophistication to understand, interpret and agree to the particular language of the provisions hereof.  In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this instrument will not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the party drafting this instrument.

7.  This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein.  No supplements, modifications, waivers or terminations of this instrument will be binding unless executed in writing by the parties to be bound thereby.  No waiver of any provisions of this instrument will be deemed or will constitute a waiver of any other provision herein (whether or not similar) nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

## Jenny Sparks

| | |
|---|---|
| **From:** | Laura Granier |
| **Sent:** | Sunday, July 28, 2013 7:31 AM |
| **To:** | Brian Kunzi |
| **Subject:** | Re: Willow Creek |

Brian,

Thank you for your response.  During our discussions with Nye County and the trustee the issue of fresh/well water came up and we all agreed that would be part of Phase II to be discussed at a future time given that all of us were focused on getting the immediate concerns (remediation) addressed.  We understood the benefit the County was paying for was the use of a significant number of acres of land under the permanent easement and the use of effluent at no charge on those parcels.  We did not pursue discussions of well water because all agreed that was complicated and required more information about the County's use.  UICN committed (subject to PUCN approval) to provided necessary well water to maintain pond levels at no charge to the county.

We always participated in good faith in these negotiations.  In June, for the first time, you raised the issue of appurtenant water rights and the County's use of the same.  Although we had concerns about a new term after what seemed to be completed negotiations (subject to govt approval) we responded and gave the county another benefit - use of appurtenant water rights for credit toward service from UICN.

Now it sounds as though the county is asking for use of water rights to provide its own service.  This is an entirely new term and even if it could be agreed to there is no assurance even this would finalize the deal.

As you know, timing is critical especially given the trustee's concerns and stated deadline to move forward or set aside the plan.  Under the circumstances we have concerns as to how this can move forward in a timely manner with the County.  Given the urgency and the sensitivities and political complexities you have described, perhaps the best way to go forward is for the Bankruptcy to be resolved between the parties to that proceeding with hopes that in the future UICN and Nye County can revisit the dialogue of some agreement to provide terms for the county's possible use of some of these lands to benefit the public.

Regards,
Laura

Sent from my iPhone

On Jul 25, 2013, at 12:23 PM, "Brian Kunzi <bkunzi@co.nye.nv.us> wrote:

> Dear Laura,
>
> While Nye County desires to continue to participate in a favorable resolution of this bankruptcy, please understand that Nye County is not a party to this bankruptcy.  We were asked to participate in an effort to bring a resolution to many issues involved with this bankruptcy.  To that end we participated with the Trustee and UICN to attempt to negotiate how the County could provide assistance in resolving some fundamental issues.
>
> You are mistaken in suggesting the County had some urgency to move this matter forward by setting deadlines for you to propose an agreement.  My position with the Trustee was I could not take a plan ratification to the Board unless and until we had an agreement regarding the rights the County would be

obtaining for the easement area.  The deadline to which you make reference in your July 22, 2013, letter was not set by the County.  I indicated to the Trustee how much time would be needed to comply with Open Meeting Law requirements if there was any hope of having this agreement approved by the Board.

The agreement we believed we had coming out of that meeting was far different than the proposed draft you prepared.  You sent a proposed agreement to which I offered many comments of concern.  One of those concerns was the absence of any discussion of the right to use water rights or treated effluent water that would be appurtenant to the easement area.  This was our number one requirement for participation as we stated numerous times during our plan negotiation meeting.  Your complete avoidance of the granting of any such rights in the proposed agreement sent warning signals regarding whether any of the negotiations were in good faith.

The warning signals were magnified by your proposed re-draft in that once again the agreement was void of any reference to the right to use appurtenant water rights.  Your June 13, 2013, email in which you so freely offer the County "water credits from water rights appurtenant to those parcels" makes no sense and offers the County nothing.  The urge caused by this seeming brush off of our concerns was to simply pull out of participation and allow liquidation of the parcels under the current zoning restrictions that would accomplish what was desired for flood control purposes in the easement area.  In short, the County has the capability of ensuring it accomplishes the goals it sought without spending any money or engaging in any additional entanglements with UICN.  While these sentiments were becoming overwhelming, we also were fully aware of the impact this decision would have on the bankruptcy in terms of the value that could be obtained.

Unfortunately I believe you have miscalculated the need for Nye County to obtain the right to use the appurtenant water rights.  While I expressed optimism to Mr. Atkinson that we could overcome our differences I was having a very difficult time devising a scheme that would be acceptable to the County.  I acknowledge and regret the delays to which I have been a party, but I feel it is important given the statements in your letter for there to be a complete understanding of the dynamics at work.  The County will not pay UICN for the use of UICN water on UICN property. This is not a case of easy politics and we feel that the proposals made were anything but responsive to our concerns.

I have attached a red-lined version of your most recent draft.  While I have had no discussions with any of the Commissioners this draft has the support of the Administration and I am confident that together we can get it approved by the Board.  I caution you to review the draft carefully because my secretary was required to re-type the agreement in Word due to the fact you provided only a PDF copy.  There may be inadvertent errors that I did not see.

I made changes to the tax language as proposed.  This is a tricky issue.  The Assessor could cause problems in this area by refusing to assess in accordance with the agreement.  We would be required to battle through the County Board of Equalization and potentially to the State Board of Equalization.  I added language that I thinks will make it easier.  The bottom line is that the County cannot agree to pay any taxes.  While the County could discuss rebating taxes under the control of the County, I cannot envision a scenario in which the Board will agree to be on the hook for taxes owed to the State, School District, Town and other taxing entities.

I am making this a priority and will be available for consultation as needed.  My schedule over the next week is open.  I will be very difficult to connect with, however, starting the following week.  You have stated your piece and I have stated my piece regarding the difficulties that have resulted in the delays.  I do not think it will be productive to continue that debate.  What is done cannot be undone, but I also do not want it to impact on our ultimate goal.  This plan is the best option, but everyone must understand the County will not invest public dollars in this venture without the ability to gain a public

benefit.  Obviously nothing can be done on this property without water.  I cannot emphasize enough that if the County cannot use the water rights available then the Administration will not recommend any such agreement to the Board.


<image001.jpg>

*Brian T. Kunzi*

**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us


<Grant of Easement - Draft(2).docx>

**Jenny Sparks**

| | |
|---|---|
| **From:** | Brian Kunzi <bkunzi@co.nye.nv.us> |
| **Sent:** | Sunday, July 28, 2013 11:48 AM |
| **To:** | Laura Granier |
| **Subject:** | Re: Willow Creek |

Laura,

Your version of revisionist history runs contrary to your own clients email  to me regarding the issue of water.  Since the County  was not a party to this bankruptcy, there is nothing lost.  Certainly the same cannot be said for Mr. Zucaro.  The value in the plan for Mr. Zucaro rested with a zoning change for the nine acres.  This was part of a potential overhaul of the master plan. Since the interests of the County have now been disregarded so much so will be the other aspects of this plan that required County participation.

Your level of misdirection has never been more apparent. You expected the County to be responsible for the condition of the ponds. This would require using the ponds for irrigation that formally went onto the golf course. This could not happen without fresh water replenishment since you have submitted there would be no effluent water in the summer when the other course took their full entitlement. Since you know state there was no intent to provide the water that is appurtenant to the parcels, which would be based on past usages for that area, it is clear your negotiations were anything but in good faith.   During this process I noted two objections to the lack of any language concerning the use of non-effluent water.  At no time did I receive an objection to the fact you believed we were injecting a new issue.  This issue was raised for the first time on July 28th.  There is very thin line between being crafty or just being a liar.  If you would like, I will forward Wendy's email to the Court in which she indicated water was not an issue so the court can decide if this change in course is fair to the minority stakeholders.

Brian T. Kunzi
Nye County District Attorney
Sent from my iPad

On Jul 28, 2013, at 7:31 AM, "Laura Granier" <lgranier@lionelsawyer.com> wrote:

> Brian,
>
> Thank you for your response.  During our discussions with Nye County and the trustee the issue of fresh/well water came up and we all agreed that would be part of Phase II to be discussed at a future time given that all of us were focused on getting the immediate concerns (remediation) addressed.  We understood the benefit the County was paying for was the use of a significant number of acres of land under the permanent easement and the use of effluent at no charge on those parcels.  We did not pursue discussions of well water because all agreed that was complicated and required more information about the County's use.  UICN committed (subject to PUCN approval) to provided necessary well water to maintain pond levels at no charge to the county.
>
> We always participated in good faith in these negotiations.  In June, for the first time, you raised the issue of appurtenant water rights and the County's use of the same.  Although we had concerns about a new term after what seemed to be completed negotiations (subject to govt approval) we responded and gave the county another benefit - use of appurtenant water rights for credit toward service from UICN.

Now it sounds as though the county is asking for use of water rights to provide its own service.  This is an entirely new term and even if it could be agreed to there is no assurance even this would finalize the deal.

As you know, timing is critical especially given the trustee's concerns and stated deadline to move forward or set aside the plan.  Under the circumstances we have concerns as to how this can move forward in a timely manner with the County.  Given the urgency and the sensitivities and political complexities you have described, perhaps the best way to go forward is for the Bankruptcy to be resolved between the parties to that proceeding with hopes that in the future UICN and Nye County can revisit the dialogue of some agreement to provide terms for the county's possible use of some of these lands to benefit the public.

Regards,
Laura

Sent from my iPhone

On Jul 25, 2013, at 12:23 PM, "Brian Kunzi" <bkunzi@co.nye.nv.us> wrote:

> Dear Laura,
>
> While Nye County desires to continue to participate in a favorable resolution of this bankruptcy, please understand that Nye County is not a party to this bankruptcy.  We were asked to participate in an effort to bring a resolution to many issues involved with this bankruptcy.  To that end we participated with the Trustee and UICN to attempt to negotiate how the County could provide assistance in resolving some fundamental issues.
>
> You are mistaken in suggesting the County had some urgency to move this matter forward by setting deadlines for you to propose an agreement.  My position with the Trustee was I could not take a plan ratification to the Board unless and until we had an agreement regarding the rights the County would be obtaining for the easement area.  The deadline to which you make reference in your July 22, 2013, letter was not set by the County.  I indicated to the Trustee how much time would be needed to comply with Open Meeting Law requirements if there was any hope of having this agreement approved by the Board.
>
> The agreement we believed we had coming out of that meeting was far different than the proposed draft you prepared.  You sent a proposed agreement to which I offered many comments of concern.  One of those concerns was the absence of any discussion of the right to use water rights or treated effluent water that would be appurtenant to the easement area.  This was our number one requirement for participation as we stated numerous times during our plan negotiation meeting.  Your complete avoidance of the granting of any such rights in the proposed agreement sent warning signals regarding whether any of the negotiations were in good faith.
>
> The warning signals were magnified by your proposed re-draft in that once again the agreement was void of any reference to the right to use appurtenant water rights.  Your June 13, 2013, email in which you so freely offer the County "water credits from water rights appurtenant to those parcels" makes no sense and offers the County nothing.  The urge caused by this seeming brush off of our concerns was to simply pull out of participation and allow liquidation of the parcels under the current zoning

restrictions that would accomplish what was desired for flood control purposes in the easement area. In short, the County has the capability of ensuring it accomplishes the goals it sought without spending any money or engaging in any additional entanglements with UICN. While these sentiments were becoming overwhelming, we also were fully aware of the impact this decision would have on the bankruptcy in terms of the value that could be obtained.

Unfortunately I believe you have miscalculated the need for Nye County to obtain the right to use the appurtenant water rights. While I expressed optimism to Mr. Atkinson that we could overcome our differences I was having a very difficult time devising a scheme that would be acceptable to the County. I acknowledge and regret the delays to which I have been a party, but I feel it is important given the statements in your letter for there to be a complete understanding of the dynamics at work. The County will not pay UICN for the use of UICN water on UICN property. This is not a case of easy politics and we feel that the proposals made were anything but responsive to our concerns.

I have attached a red-lined version of your most recent draft. While I have had no discussions with any of the Commissioners this draft has the support of the Administration and I am confident that together we can get it approved by the Board. I caution you to review the draft carefully because my secretary was required to re-type the agreement in Word due to the fact you provided only a PDF copy. There may be inadvertent errors that I did not see.

I made changes to the tax language as proposed. This is a tricky issue. The Assessor could cause problems in this area by refusing to assess in accordance with the agreement. We would be required to battle through the County Board of Equalization and potentially to the State Board of Equalization. I added language that I thinks will make it easier. The bottom line is that the County cannot agree to pay any taxes. While the County could discuss rebating taxes under the control of the County, I cannot envision a scenario in which the Board will agree to be on the hook for taxes owed to the State, School District, Town and other taxing entities.

I am making this a priority and will be available for consultation as needed. My schedule over the next week is open. I will be very difficult to connect with, however, starting the following week. You have stated your piece and I have stated my piece regarding the difficulties that have resulted in the delays. I do not think it will be productive to continue that debate. What is done cannot be undone, but I also do not want it to impact on our ultimate goal. This plan is the best option, but everyone must understand the County will not invest public dollars in this venture without the ability to gain a public benefit. Obviously nothing can be done on this property without water. I cannot emphasize enough that if the County cannot use the water rights available then the Administration will not recommend any such agreement to the Board.

*Brian T. Kunzi*

**Brian T. Kunzi**
**Nye County District Attorney**
**P.O. Box 39**
**Pahrump, Nevada  89041**
(775) 751-7080
bkunzi@co.nye.nv.us

<Grant of Easement - Draft(2).docx>

This e-mail message is a confidential communication from the law firm of Lionel Sawyer & Collins and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702-383-8888 and delete this e-mail message and any attachments from your workstation or network mail system.

## Jenny Sparks

| | |
|---|---|
| **From:** | Laura Granier |
| **Sent:** | Monday, August 05, 2013 9:28 AM |
| **To:** | 'bkunzi@co.nye.nv.us' |
| **Subject:** | Redline Easement Agreement - Nye County |
| **Attachments:** | Redline Easement Agreement - Nye County.docx |
| | |
| **Importance:** | High |

Brian -

I understand from your emails that the politics around you getting the necessary County approvals as contemplated in the first BK plan are complicated to say the least. It was surprising and disappointing to hear there were efforts by some in the County to completely undo the deal we all worked so hard to put together and, instead, seek to liquidate the course and sell it off piece by piece. What a disaster that would be for the community not to mention the health and public safety issue it would create relative to the desperately needed remediation and also the operation of WWTP 3.

It also has been very disappointing to hear that an issue we expressly raised and agreed would be part of Phase II (to be addressed at a later time) -- necessary fresh water for whatever the County's use of the easement was -- had changed and the County was insisting on free fresh water for use on the easement or unfettered use of water rights belonging to UICN. I believe Robert Atkinson has the same recollection on this issue. We all acknowledged during our meeting that any rate UICN charges (including a proposal of a rate of no charge) must be approved by the PUCN and that historically the PUCN has always had concerns about cross subsidizing. Yet, after many months the County now adds a proposed revision to the draft easement agreement that I first circulated in April providing for free fresh water. This late change has caused us and the trustee grave concerns.

Notwithstanding all of these challenges the County has raised over the last several months, UICN still is willing to go forward with the last version of the easement agreement we had offered and only minor modifications to address issues raised recently by the County -- for clarity - to avoid any future litigation. These changes do not, in any way, change the deal we all had agreed to but instead document very clearly what we all intended. We have had lengthy discussions internally about how to cooperate and work with the County to make this deal work and this draft is the best we can agree to. If it is acceptable to the County, please let me know.

I look forward to hearing from you.

Laura

**APNs: 039-651-01, 039-511-26,
039-541-13, 039-552-09, 039-591-15,
039-601-01, 039-621-08, 039-661-01,
039-681-08, 039-691-34, 039-704-09,
039-731-01, 039-741-01, 039-751-07,
039-761-01, 039-783-07, 039-821-19,
and 039-651-02**

**Recording    requested
and    when    recorded
return to:**
Laura Granier, Esq.
Lionel Sawyer & Collins
50 W. Liberty Street,
Suite 1100
Reno, NV 89501

### GRANT OF EASEMENT AND INDEMNITY/HOLD HARMLESS AGREEMENT

This Grant of Easement and Indemnity/Hold Harmless Agreement ("Agreement") is made as of this ___ day of August, 2013, by Utilities, Inc. of Central Nevada ("Grantor") for the benefit of the County of Nye, a political subdivision of the State of Nevada ("Grantee").

Whereas, Grantor is seeking to become the owner of the property described on Exhibit A to this Agreement (the "Burdened Property"), which property is commonly known as the Willow Creek Golf Course;

Whereas, Grantor will only become the owner of the Burdened Property if its acquisition and remediation of such property is approved by the Public Utilities Commission of Nevada and proposed ownership, control and remediation of the property formerly commonly known as the Willow Creek Golf Course is approved relative to Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection (collectively, the "State Approvals"); and

Whereas, Grantee desires to obtain an easement over the portion of the Burdened Property described on Exhibit B hereto (the "Easement Area") if and when Grantor acquires the Property for the purposes described below.

Now, therefore, for good and valuable consideration, the receipt of which is hereby confirmed, Grantor and Grantee agrees as follows:

1. The easement to be granted hereunder will not become effective and this instrument shall not be recorded unless and until:

| **Deleted:** May |

a. Grantor is the owner of the Burdened Property and the State Approvals have been granted;

b. The Bankruptcy Court in case number 12-22484 has issued an order approving Grantor's ownership of the Burdened Property;

c. Grantee's County Commission has approved this Agreement in its entirety;

2. Upon satisfaction of the foregoing conditions and recordation of this document in the real property records of Nye County, Nevada, the following will become effective:

a. Grantor hereby grants to Grantee an exclusive easement over the Easement Area for the purpose of allowing the public to use the Easement Area for a park and related recreational purposes subject to Grantor's continuing ownership and use for discharge of treated effluent from Waste Water Treatment Plant No. 3 and any utility infrastructure and/or transmission or water lines or pipes underlying or within the Easement Area. Notwithstanding the foregoing, Grantee's use of the Easement Area is limited as follows:

i. Grantee's development of and use of the Easement Area may not interfere with Grantor's use of the Easement Area for discharge of treated effluent as set forth in Grantor's Discharge Permit issued by the Nevada Department of Environmental Protection, permit number NEV89063 (as it may be amended or reissued). To that end, Grantee will provide a reasonably detailed notice to Grantor describing any proposed development or use (or change of existing approved use) of the Easement Area by Grantee. Grantor will have 30 days to approve such use. If Grantor elects to disapprove such development or use based on proposed activities that could interfere with UICN's use of the area for discharge of treated effluent, Grantor will provide Grantee with a reasonably detailed notice describing its reasons for disapproval so that Grantee may amend its proposed development or use of the Easement Area in a manner that would be acceptable to Grantor. Grantee acknowledges and agrees that it is essential to Grantor's use of the Easement Area described above that the ponds currently located on the Easement Area be maintained substantially in the condition they are today except that the parties' acknowledge that Grantor may use any dry ponds for storage of effluent. Thus, Grantor's disapproval of any use or development of the Easement Area by Grantee that impacts Grantor's use of the ponds for storage of effluent will, in all circumstances, be deemed reasonable.

**Deleted:** (which approval will not be unreasonably withheld, conditioned or delayed)

**Deleted:** If Grantor fails to disapprove the development or use, Grantee's proposed development or use will be deemed approved.

Cee/12245/easement agreement.doc

ii. If Grantee breaches its obligations hereunder and such breach continues for 30 days after notice of breach from Grantor and such breach jeopardizes or impairs Grantor's ability to continue operation of Waste Water Treatment Plant Number 3 ("WWTP 3"), then Grantor shall be entitled to injunctive relief requiring such measures to ensure continued operation of WWTP 3 and compliance with Grantor's Discharge Permit.

iii. Other than as expressly set forth in this Grant of Easement and Indemnity Agreement, Grantee will be solely responsible for the costs of any development and maintenance of the Easement Area, including installing irrigation and other infrastructure and acquisition of water rights. Grantee will also be responsible for maintaining the ponds located on the Easement Area including any ponds partially located within the Easement Area so as to avoid organic contamination of such ponds as set forth in NDEP regulations and statutes and any other applicable law.

iv. Grantor will provide such water as is reasonably necessary for maintaining adequate water levels in the ponds located on the Easement Area as required by NDEP (subject to any Public Utilities Commission of Nevada approvals or requirements), including the costs to operate and maintain the pump house that will deliver water to the Easement Area for irrigation (but not for human consumption). Grantee shall ensure water does not exceed maximum levels in the ponds as set forth by NDEP in all relevant discharge permits. Grantee acknowledges that it is the parties' understanding that nothing herein shall be construed to provide Grantee (i) the right to use fresh water for free from UICN; or, (ii) the right to use any appurtenant water rights within the Easement Area except for purposes of applying to UICN for service within the Easement Area.

v. Grantee will be responsible for transmission of effluent discharged from Waste Water Treatment Plant No. 3 as required under that certain Tri-Partite Agreement and Lakeview Water Agreement dated June 18, 2004 and attached hereto as Exhibit [ ] and as may be necessary to provide continued storage for any water including treated effluent discharged from Waste Water Treatment Plant 3. Grantee will have a first priority right to use of such treated effluent in the Easement Area provided that (i) the Lakeview Golf Course has received up to 425,000 gallons per day (at Lakeview's discretion) or adequate treated effluent as required under the Lakeview Water Agreement or any amendment to the Lakeview Water Agreement; and, (ii) such first priority right to use of the treated effluent shall be limited based on a pro rata

Cee/12245/easement agreement.doc

basis using the number of acres within the Easement Area as compared to the total remaining acres owned by Grantor.

vi.  Grantee acknowledges and agrees that any and all portions of the Property, including the Easement Area, but expressly excluding the parcel described on Exhibit C to this Agreement, will remain available to Grantor, its successors and assigns, for the discharge of effluent from Waste Water Treatment Plant 3, and to Grantee for transmission and discharge of effluent from Waste Water Treatment Plant 3 so long as such treatment and discharge is conducted in accordance with all applicable federal and state laws relating to human health and the environment.  Grantor acknowledges and agrees that it shall not grant any easements to other parties that would interfere with Grantee's use of the Easement Area as set forth herein.

vii.  The parties acknowledge that nothing in this Grant of Easement and Indemnity/Hold Harmless Agreement will affect the provisions of that certain Tri-Partite Agreement, dated as of January 24, 2000, recorded in the real property records of Nye County, Nevada, as document number 486378, which agreement runs with the land and remains in full force and effect.

viii.  Grantee will indemnify, defend and hold Grantor, its successors, assigns, officers, directors, agents and employees ("Indemnified Parties"), harmless from and against any loss, cost, claim or damage (including attorneys' fees and costs) it may incur that arise from or in connection with Grantee's use or development of the Easement Area or breach of this Agreement, including without limitation, any such loss, cost, claim or damage an Indemnified Party may incur that arises from a member of the public's entry onto or use of the Easement Area for a park or related recreational purposes, other than any such loss, cost, claim or damage that arises solely from the grossly negligent or intentional acts of an Indemnified Party.  Grantee shall provide for a general liability insurance policy that covers Grantee for loss, cost, claim or damage to persons or property in the amount of at least $1 million per occurrence, and will cause Grantor to be named as an additional insured under such policy.

ix.  Grantee acknowledges and agrees that its use of the Easement Area removes most if not all of the value of the Easement Area from Grantor and, consequently, (a) the assessed value of the Easement Area will be zero; or (b) if for any reason the assessed value of the Easement area is not zero, Grantee will be

Cee/12245/easement agreement.doc

solely responsible for payment of any property taxes related thereto.  If the Easement Area does not constitute a full legal parcel or parcels, property taxes will be apportioned on a pro rata basis between the portion of the Easement Area that does not constitute a full legal parcel and the remaining portion of the legal parcel of which such portion of the Easement Area constitutes a part.  By way of example, but not limitation, if a portion of the Easement Area constitutes 4 acres of a full legal parcel and the remaining portion of the legal parcel constitutes an additional four acres, Grantor's liability for property taxes on the legal parcel will be 50% of what Grantor's liability for property taxes would be in the absence of the easement granted hereby.

x.   This Grant of Easement and Indemnity/Hold Harmless Agreement is personal to Grantee.  Grantee will not assign its rights hereunder to any person, entity, governmental entity, agency or subdivision and any attempted assignment will be null and void absent the written consent of Grantor, given or withheld in its sole discretion.  The burden of the easement granted hereby will run with the Easement Area and be binding on Grantor's successors and assigns.

3.   Any and all exhibits hereto are incorporated herein as if fully set forth herein.

4.   This instrument may be executed in two or more counterparts, which, when taken together, will constitute one and the same instrument.  Any signature page of this instrument may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart identical in form thereto, but having attached to it one or more additional signature pages.  The parties contemplate that they may be executing counterparts of this instrument transmitted by facsimile and agree and intend that a signature transmitted through a facsimile machine will bind the party so signing with the same effect as though the signature were an original signature.

5.   Each party represents that it has all necessary power and authority to enter into and perform its obligations hereunder.

6.   The parties hereto acknowledge that each has been given the opportunity to independently review this instrument with legal counsel, or has the requisite experience and sophistication to understand, interpret and agree to the particular language of the provisions hereof.  In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this instrument will not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the party drafting this instrument.

5 | P a g e

Cee/12245/easement agreement.doc

7. This instrument constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties in connection with the subject matter hereof, except as specifically set forth herein.  No supplements, modifications, waivers or terminations of this instrument will be binding unless executed in writing by the parties to be bound thereby.  No waiver of any provisions of this instrument will be deemed or will constitute a waiver of any other provision herein (whether or not similar) nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

[Signatures appear on following page]



Cee/12245/easement agreement.doc

[Signature page to Grant of Easement and Indemnity Agreement]

      In witness whereof, the undersigned set their hands as of the date first set forth above.

Nye County Commission

By:_____

Printed:_____

Title: Chair

Approved as to form by District Attorney's office, Nye County, Nevada:

_____

Printed:_____

Title:_____

Utilities, Inc. of Nevada, a Nevada corporation

By:_____

Printed:_____

Title:_____

Exhibit A

Description of Burdened Property



Cee/12245/easement agreement.doc

Exhibit B

Description of Easement Area



Cee/12245/easement agreement.doc

Exhibit C

Description of Parcel 16



Cee/12245/easement agreement.doc

# EXHIBIT 3

# EXHIBIT 3

## PAHRUMP REGIONAL PLANNING COMMISSION
## MINUTES OF THE JUNE 11, 2008 MEETING

**Call to Order and Roll Call**

The meeting was called to order in the Main Hall of the Bob Ruud Community Center in Pahrump, Nevada at 6:00 p.m.

| Members in Attendance: | Mark D. Kimball | Carrick "Bat" Masterson | Norma J. Opatik |
| | Nevada Tolladay | Jacob Skinner | Dan Schinhofen |
| | Laurayne Murray | Gary Hollis | |

| Members Absent: | Butch Borasky |

| Planning Staff: | Jack Lohman | Steve Osborne | David Stallworth |
| | Beth Lee | Shiloh F. Schmidt | Ryanne Dudenski |

| District Attorney's Staff: | Ron Kent |

| Building & Safety Staff: | None |

| Public Works Staff: | None |

Acronyms Used:

| | | |
|---|---|---|
| ADT | = | Average Daily Traffic |
| ARC | = | Architectural Review Committee |
| BLM | = | Bureau of Land Management |
| BOCC/BOC | = | Board of County Commissioners |
| CAA | = | Charles Abbott Associates |
| CUP | = | Conditional Use Permit |
| DOR | = | Deed of Restrictions |
| CCO | = | Code Compliance Officer |
| CC&R | = | Covenants, Conditions & Restrictions |
| DRC | = | Development Review Committee |
| FEMA | = | Federal Emergency Management Agency |
| NBHPS | = | Nevada Bureau of Health Protection Services |
| NCC | = | Nye County Code |
| NCSD | = | Nye County School District |
| NDEP | = | Nevada Division of Environmental Protection |
| NDWR | = | Nevada Division of Water Resources |
| NDOT | = | Nevada Department of Transportation |
| NRS | = | Nevada Revised Statues |
| PRPD | = | Pahrump Regional Planning District |
| PRPC/RPC | = | Pahrump Regional Planning Commission |
| PTB | = | Pahrump Town Board |
| PUD | = | Planned Unit Development |
| USFS | = | United States Forest Service |
| ROW | = | Right-of-Way |
| SFR | = | Single-Family Residential |
| SOB | = | Sexually Oriented Business |
| TIA | = | Traffic Impact Analysis |
| TPC | = | Transportation Planning Committee |
| UBC | = | Uniform Building Code |

Jack Lohman stated if you wanted to extend the Mixed Use to those two lots that would be a Master Plan Amendment. Can they do that? He needed to check.

Commissioners and the Staff had some discussion on whether they can go back and remand the motion to include the Zone Change. Mr. Kent was checking the information to see whether they could go back or not.

**Break-6:46 p.m.**

**Reconvened-6:57 p.m.**

Commissioner Kimball stated that counsel has explained to him, due to the technicalities involved in the Master Plan Amendment our intent might be to try and give you the Neighborhood Commercial on the front two. But we cannot do it tonight, you will have to come back. The Zone Change discussion should have been voted on with the Master Plan.

Jack Lohman stated that they have discussed this with the applicant that we think that if they want to do this that the front two lots can come back with a land use amendment which would allow Neighborhood Commercial zoning. That would make more sense. It would basically have to be a new application. Unfortunately the way the code reads is that it has been on the book since 2004 it is a code requirement that we do these at certain windows four times a year and the next window is September. So he can re-apply this upcoming September.

Dave Richards asked if they can continue this application to modify it. Evidently nobody likes the Multi-Family twenty acres in the back so it was suggested that possibly Neighborhood Commercial on the entire site than just the front two.

Ron Kent stated that they have the ability to go back and rescind, that is an exception certainly not to rule. What you have right now is a vote and a second and the Master Plan has been denied and the Zone Change has moved.

Commissioner Kimball stated unless there is some strong feeling on a commissioners part that they want to go back we have to just go ahead and move forward now. Commissioner Schinhofen made the original motion, is he willing to make a motion to rescind and reconsider?

Commissioner Schinhofen stated that he is willing to make a motion to reconsider and rescind.

Commissioner Murray stated that she was not willing to second the motion to rescind MP-08-0008

Jack Lohman stated that this is going to go to the BOCC anyway as a recommendation whether you appeal it or not. They will go together.

11.   **CU-08-0008:** Conditional Use Permit (CUP) application to allow for a casino/hotel/resort in the General Commercial (GC) Zoning District, located at 1500 S. Red Butte St., situated 350-feet west of the intersection of Mt. Charleston Drive and Red Butte Street, known as Lot 129, Block 35 of Calvada Valley Unit 7. Willow Creek Holdings, LLC – Property Owner, Aram Maissian – Applicant, IBI Group – Agent. AP# 39-651-01.

Steve Osborne reviewed the application, case history, and project description; the applicant is proposing to develop a three story hotel, a new club house and a casino. The Casino and the hotel require conditional use permits in the General Commercial zoning district, this property was rezoned from the Open Space Zone to the General Commercial zoning district in February. Staff has reviewed this request and we believe that the site plan that is submitted is appropriate for the area. We recommend approval of the request subject to all the conditions outlined in the staff report.

Commissioner Masterson said when this was approved the golf course had to stay into use as a golf course till the year 2043, is that correct.

Steve Osborne stated yes it required an additional 30 years on to the CC&R's to be used as a golf course.

Commissioner Masterson stated yes but we cannot change CC&R's. The casino cannot be sold without the golf course.

Steve Osborne stated that is correct. You can make a condition that the developer do that.

Ron Kent stated that is was contemplated in the Final Action Memorandum, should have been filed as a notice constructive notice and a lien against the property. If it hasn't been done we can certainly do it.

Commissioner Kimball asked if there was a development agreement with this project.

Jack Lohman stated no. They felt that for the size and scope of this project you can get what you need with a use permit.

James Veltman with Studio VVM, site planner for RBI. This is step three in a process of attempting to improve the quality of the Willow Creek Golf Course and is an attempt to bring to Willow Creek a destination resort hotel complex. The only change that we have made since the zoning case is they have moved the building a little bit so they can build around the existing clubhouse. So that during construction the existing clubhouse can stay in operation, while the rest of the facility is being built. With that he thinks they have reviewed all of the conditions and the recommendations and they have no problem with them. They would like to see you approve this project so they can get on with the next step.

Anthony Maissian stated that the golf course is still open and operating. They hope that the commission goes with the recommendation from staff and they just continue on to the next step in getting this project to completion.

Commissioner Kimball asked, if this is approved tonight what do they see as a timeline to get started?

Anthony Maissian stated that if it is approved tonight, to get started would be anywhere from 3 to 6 months at the most.

Commissioner Schinhofen referenced number 16 under the special conditions. He stated that he is not quite clear on that, every golf course that he has been on they have announced who is teeing off.

Anthony Massian stated that announcing tees times to get the golfers on the tee on time is not going to be a disturbance to the surrounding neighborhood.

Commissioner Tolladay stated that we need to amend special condition number sixteen when the motion is made.

Ron Kent stated he doesn't even know if it is a necessity to amend item sixteen. It is pretty well common knowledge, you announce tee times. That has been going on since the golf course was created and it will continue to go on. This clearly anticipates any extraordinary noises generated from the facility above and beyond a normal operation noises. Staff is recommending that kind of activity in that highly dense residential area should be prohibited.

Commissioner Kimball stated so in your judgment we do not need to do any additional wording in that motion.

Jack Lohman stated that when the zone change was approved for this project, there was a very specific condition that the golf course had to go on until 2043. There was a second part of that condition that said that they have to provide us a document that a stipulation would be recorded on the CC&R's and they did provide us with a draft. We did not quite get the copy that we wanted nailed down specifically stating that. He thinks that he should restate that condition to make sure that we get it exactly the way the BOCC wanted it in the zone change.

Anthony Massian stated that he is more than willing to sit down with the staff and work through any of those agreements.

Ron Kent stated that you would agree that it would relate back to the date of the prior hearing.

Anthony Massian stated that they all agree to the year 2043.

**PRPC June 11, 2008 Meeting Minutes**                                    Page 8 of 18

Commissioner Skinner stated since the applicant is ready to go he doesn't see any reason why we should have the Conditional Use Permit expire in three years. He thinks it should be lessened to one year.

Commissioner Kimball stated that what it says is that the use is commenced or construction is completed. It is quite appropriate to be three years.

Commissioner Skinner stated that he read it incorrectly.

**Public Comment 7:21 p.m.**

Joe McKendrick referenced his letter. *(letter attatched)*

Don Luttrell stated that he is in agreement with everything that Mr. McKendrick stated. If we wanted to save the golf course like he does then we would delay the conditional use permit until the gaming license was issued. *(letter attatched)*

Commissioner Kimball stated that the gaming license is issued after the Conditional Use Permit. This is not us rushing to judgment, this was gone over very carefully in public here and then in front of the BOCC.

Don Luttrell stated that he hopes that the people in Pahrump think of this when election time comes around, so they can elect the right people that make the right decisions. If the commission or planning would have done or attempted investigation of Willow Creek Holdings like myself and Mr. McKendrick did, you wouldn't issue them a temporary permit for them to chew gum.

Richard Cantino stated that the project ought to go ahead and start and as soon as possible.

Joyce Call stated that she is a member of Willow Creek Golf Course and that she also lives on the golf course. They have done wonders with that golf course just in that last 3 or 4 months, they have restored it and it is in great shape. Mr. Luttrell has a bone to pick because he was told that he can never come to the golf course again. His house is up for sale, so as soon as his house sales, he is going to be long gone.  She said that we shouldn't listen to anything he says.

Kay Hendricks stated that she is a resident of Lake View. She said the reason why there was so many people there at the February meeting is because they were all convinced that Willow Creek was going to buy Lake View Golf Course and that they had put down a $30,000 deposit with the option to get all of their money back. They are no longer interested in Lake View Golf Course. So you don't see the lake View people here, probably because they don't know what is going on. She is disappointed because she thinks that Joe and Don have done their homework, and she questions whether the Commissioners or the RPC have done their homework. She wanted to make sure that they have done their homework before they vote in favor.

Commissioner Kimball stated that he thought that the purchase of Lake View was one of the conditions of the approval.

Jack Lohman stated that we do not get involved in the contractual deals with one of these two parties. That was not part of the condition.

Dan Simmons stated that he is a resident of Willow Creek Golf Course, and that he thinks that there is a real danger, that is without some additional funding coming into the golf course we are going to end up with just weeds. At some point a business will just cease to operate and they will have to stop watering. These people need this business and this income to continue to maintain the golf course. He would really encourage them to consider their request and approve it .

Richard Taylor stated that he also lives on the golf course and his main concern would be if they do not have the golf course there, where is the utility company going to dump all of their waste.

Commissioner Borasky stated that he apologizes that he couldn't be on time tonight and thanks Commissioner Hollis for filling in his place. He is the one that motioned to approve this at the BOCC. He had put 4 additional special conditions on this project. One was to extend the date to 2043; two was that the golf course be fully maintained until at least 2043, and would like to see that within 90 days; three that the developer get a Conditional Use permit, which is what you are taking care of now and four that the developer would have to comply with all state and federal regulations. The project is to be started within one year and completed within two years.

Everett Greenwood stated that he had attended two of the Willow Creek Golf Course meetings where they had stated that they were going to buy Lake View Golf Course as part of the purchase and the development of Willow Creek. That was also stated again at the BOCC meeting.

**Public Comment Closed 7:45 p.m.**

Anthony Maissian stated that they are more than willing to work with staff on any issues. There has been a lot said about people doing their homework. I was an educator in Clark County and the homework that was done would have failed in his class. The taxes that were past due were not on our property. IBI holds and Nevada State Business License and a Clark County Business License and they are hired by them to do the work. He doesn't see them filing a fictitious firm name in Nye County when they already have it with the State. They had every intention in buying Lake View, we would like it as an overflow facility, we are going to need a place to put locals and people who don't want to play 18 holes. He said that their funding didn't come through , so they were forced to pull out their $30,000 to make payroll. If this project goes through they will take another run at Lake View. They would like both properties to be tied in together.

Commissioner Tolladay asked counsel if they needed to have a Nye County business license also.

Ron Kent stated that when it comes to a DBA the purpose intent of the ordinance as well as the statute is to protect consumers in retail transactions. The DBA applies to people that are coming out and giving you pest control, or selling you a car. The purpose being the people have the right to know who owns the company. They are just developing land and to his knowledge they are not dealing with consumers on any type of retail levels. They do not need a DBA. They might need to go to the Town of Pahrump under their business license ordinance. We don't require developers coming into this jurisdiction coming before board and county commission in the preambles of the development to go out and get DBA unless they are actually doing business with consumer retail services. Based on the information he has, there is no problem.

Commissioner Kimball asked if we can add another special condition that would reconsider the purchase of Lake View, when finances would allow him to do so.

Anthony Maissian stated that he can't say today that he can commit to it.

Commissioner Kimball would like to get on the record that it is the spirit to do so whether or not it is binding.

Anthony Maissian stated if it is a non-binding condition, and with funding in place he would.

***Commissioner Masterson motioned to approve CU-08-0008 adding a condition that deed on the CC&R's be completed before the Conditional Use Permit and relating back to the initial hearing, which is special condition # 18.  Commissioner Skinner seconded.  Roll call vote: Murray, no; Opatik, yes; Tolladay, yes; Masterson, yes; Kimball, yes; Skinner, yes; Schinhofen, yes; Motion to approve passes 6-1.***

**Break-7:58 p.m.**

**Reconvened-8:10 p.m**

10.   a.   **MP-08-0009**: (Minor) Master Plan Amendment application to change approximately 319.76 acres from the BLM Disposal Area Heavy Industrial Reserve Land Use Category to the Community Facilities/Municipal/Schools Land Use  Category, situated at the northeast corner of the intersection of Jeane Avenue and Eberhard Road, located at 7501 E. Chromium Blvd., Section 2, Township 21

Approved Date:          July 9, 2008                    Attest:

Mark D. Kimball, Chairperson                  Norma Jean Opatik, Secretary
Pahrump Regional Planning Commission          Pahrump Regional Planning Commission